[No. B063918. Second Dist., Div. Five. Apr. 21, 1992.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGLES COUNTY, Respondent;
SOON JA DU, Real Party in Interest.

824

**COUNSEL**

Ira Reiner, District Attorney, Harry B. Sondheim, George G. Size and Glenn R. Britton, Deputy District Attorneys, for Petitioner.

De Witt W. Clinton, County Counsel, Frederick R. Bennett, Assistant County Counsel, Sidley & Austin and Donald Etra, for Respondent.

Mathews & Evans and Charles T. Mathews as Amici Curiae on behalf of Respondent.

Charles E. Loyd, Richard A. Leonard and Richard D. Rome for Real Party in Interest.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff and Albert J. Menaster, Deputy Public Defenders, as Amici Curiae on behalf of Real Party in Interest.

## Opinion

### ASHBY, Acting P. J.—

### Introduction

Defendant Soon Ja Du was convicted of voluntary manslaughter in the killing of Latasha Harlins, a customer in defendant's store. Defendant was sentenced to 10 years in state prison. The sentence was suspended and defendant was placed on probation under certain terms and conditions. Petitioner (District Attorney) contends the court abused its discretion in granting probation and seeks a writ of mandate directing the court to "impose a legal sentence of an appropriate term in state prison."[1]

In an indirect way, the District Attorney has correctly framed the single issue in this case: was the sentence imposed by the respondent court "legal," that is, was it in accordance with statutorily defined sentencing guidelines.

A trial court has broad discretion in determining whether or not to grant probation. In reviewing that determination it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances. Utilizing this standard of review, we conclude that the respondent court's determination was not an abuse of discretion. Accordingly, we deny the petition.

### Facts[2]

The crime giving rise to defendant's conviction occurred on the morning of March 16, 1991, at the Empire Liquor Market, one of two liquor stores owned and operated by defendant and her family. Although Empire Liquor was normally staffed by defendant's husband and son while defendant worked at the family's other store in Saugus, defendant worked at Empire on the morning of March 16 so that her son, who had been threatened by local

---

[1] This issue is properly raised by way of an extraordinary writ petition. Penal Code section 1238, subdivision (d), provides: "Nothing contained in this section [When State May Appeal] shall be construed to authorize an appeal from an order granting probation. Instead, the people may seek appellate review of any grant of probation, whether or not the court imposes sentence, by means of a petition for a writ of mandate or prohibition which is filed within 60 days after probation is granted. The review of any grant of probation shall include review of any order underlying the grant of probation."

[2] The facts are taken from the evidence presented at trial, including the testimony of witnesses and a videotape of the incident which was in evidence at trial and which was submitted as an exhibit to the petition.

gang members,[3] could work at the Saugus store instead. Defendant's husband, Billy Du, was present at the Empire Liquor Market that morning, but at defendant's urging he went outside to sleep in the family van because he had worked late the night before.

Defendant was waiting on two customers at the counter when the victim, 15-year-old Latasha Harlins, entered the store. Latasha proceeded to the section where the juice was kept, selected a bottle of orange juice, put it in her backpack, and proceeded toward the counter.

Defendant had observed many shoplifters in the store,[4] and it was her experience that people who were shoplifting would take the merchandise, "place it inside the bra or anyplace where the owner would not notice," and then approach the counter, buy some small items and leave. Defendant saw Latasha enter the store, take a bottle of orange juice from the refrigerator, place it in her backpack and proceed to the counter. Although the orange juice was in the backpack, it was partially visible. Defendant testified that she was suspicious because she expected if the victim were going to pay for the orange juice, she would have had it in her hand.

Thirteen-year-old Lakeshia Combs and her brother, nine-year-old Ismail Ali, testified that Latasha approached the counter with money ("about two or three dollars") in her hand. According to these witnesses, defendant confronted Latasha, called her a "bitch" and accused her of trying to steal the orange juice; Latasha stated she intended to pay for it. According to defendant, she asked Latasha to pay for the orange juice and Latasha replied, "What orange juice?" Defendant concluded that Latasha was trying to steal the juice.[5]

Defendant began pulling on Latasha's sweater in an attempt to retrieve the orange juice from the backpack. Latasha resisted and the two struggled. Latasha hit defendant in the eye with her fist twice. With the second blow,

---

[3]Defendant's son, Joseph Du, testified that he had been threatened by local gang members because he was planning to testify against one of the gang members who he believed had robbed the store.

[4]Defendant's son, Joseph Du, testified that there were at least 40 shoplifting incidents a week at the store.

[5]Defendant testified that it was Latasha's statement, "What orange juice?" which changed defendant's attitude toward the situation, since prior to that time defendant was not afraid of Latasha. Defendant also thought Latasha might be a gang member. Defendant had asked her son, Joseph Du, what gang members in America look like, and he replied "either they wear some pants and some jackets, and they wear light sneakers, and they either wear a cap or a hairband, headband. And they either have some kind of satchel, and there were some thick jackets. And he told me to be careful with those jackets sticking out." Latasha was wearing a sweater and a "Bruins" baseball cap.

defendant fell to the floor behind the counter, taking the backpack with her. During the scuffle, the orange juice fell out of the backpack and onto the floor in front of the counter. Defendant testified that she thought if she were hit one more time, she would die. Defendant also testified that Latasha threatened to kill her. Defendant picked up a stool from behind the counter and threw it at Latasha, but it did not hit her.

After throwing the stool, defendant reached under the counter, pulled out a holstered .38-caliber revolver, and, with some difficulty, removed the gun from the holster. As defendant was removing the gun from the holster, Latasha picked up the orange juice and put it back on the counter, but defendant knocked it away. As Latasha turned to leave defendant shot her in the back of the head from a distance of approximately three feet, killing her instantly. Latasha had $2 in her hand when she died.

Defendant's husband entered the store upon hearing defendant's calls for help and saw Latasha lying on the floor. Defendant leaned over the counter and asked, "Where is that girl who hit me?" Defendant then passed out behind the counter. Defendant's husband attempted to revive her and also dialed 911 and reported a holdup. Defendant, still unconscious, was transported to the hospital by ambulance, where she was treated for facial bruises and evaluated for possible neurological damage.

At defendant's trial, she testified that she had never held a gun before, did not know how it worked, did not remember firing the gun and did not intend to kill Latasha.

Defendant's husband testified that he had purchased the .38-caliber handgun from a friend in 1981 for self-protection. He had never fired the gun, however, and had never taught defendant how to use it. In 1988, the gun was stolen during a robbery of the family's store in Saugus. Defendant's husband took the gun to the Empire store after he got it back from the police in 1990.

David Butler, a Los Angeles Police Department ballistics expert, testified extensively about the gun, a Smith & Wesson .38-caliber revolver with a two-inch barrel. In summary, he testified that the gun had been altered crudely and that the trigger pull necessary to fire the gun had been drastically reduced. Also, both the locking mechanism of the hammer and the main spring tension screw of the gun had been altered so that the hammer could be released without putting much pressure on the trigger. In addition, the safety mechanism did not function properly.

After conclusion of the testimony at trial, the court granted a defense motion to dismiss the charge of first degree murder. The jury was instructed

on second degree murder, two theories of voluntary manslaughter (sudden quarrel or heat of passion [CALJIC Nos. 8.42, 8.43 and 8.44] and honest but unreasonable belief in self-defense [CALJIC No. 5.17]), and involuntary manslaughter.

The jury found defendant guilty of voluntary manslaughter and also found true special allegations that defendant personally used a firearm, within the meaning of Penal Code sections 1203.06, subdivision (a)(1) and 12022.5. By convicting defendant of voluntary manslaughter, the jury impliedly found that defendant had the intent to kill and that the killing was unlawful, i.e., that it was neither justifiable nor excusable. (CALJIC No. 8.40.) Thus, the jury rejected the defenses that the killing was unintentional and that defendant killed in self-defense.

### PROBATION REPORT

After defendant's conviction, the case was evaluated by a Los Angeles County Probation officer, who prepared a presentence probation report. That report reveals the following about defendant:

At the time the report was prepared, defendant was a 51-year-old Korean-born naturalized American citizen, having arrived in the United States in 1976. For the first 10 years of their residence in the United States, defendant worked in a garment factory and her husband worked as a repairman. Eventually, the couple saved enough to purchase their first liquor store in San Fernando. They sold this store and purchased the one in Saugus. In 1989, they purchased the Empire Liquor Market, despite being warned by friends that it was in a "bad area."

These warnings proved prophetic, as the store was plagued with problems from the beginning. The area surrounding the store was frequented by narcotics dealers and gang members, specifically the Main Street Crips. Defendant's son, Joseph Du, described the situation as "having to conduct business in a war zone." In December 1990, defendant's son was robbed while working at the store and he incurred the wrath of local gang members when he agreed to testify against one of their number who he believed had committed the robbery.[6] Soon thereafter, the family closed the store for two weeks while defendant's husband formulated a plan (which he later realized

---

[6]Joseph Du testified at trial that on December 19, 1990, approximately 10 to 14 Black persons entered the store, threatened him, and robbed him again. The store was burglarized over 30 times and shoplifting incidents occurred approximately 40 times per week. If Joseph tried to stop the shoplifters, "they show me their guns." Joseph further testified that his life had been threatened over 30 times, and more than 20 times people had come into the store and threatened to burn it down. Joseph told his mother about these threats every day because he

was "naive") to meet with gang members and achieve a form of truce. The store had only recently been reopened when the incident giving rise to this case occurred.

The probation officer concluded "it is true that this defendant would be most unlikely to repeat this or any other crime if she were allowed to remain free. She is not a person who would actively seek to harm another . . . ." However, she went on to state that although defendant expressed concern for the victim[7] and her family, this remorse was centered largely on the effect of the incident on defendant and her own family.[8] The respondent court found, however, that defendant's "failure to verbalize her remorse to the Probation Department [was] much more likely a result of cultural and language barriers rather than an indication of a lack of true remorse."

The respondent court sentenced defendant to ten years in state prison (six years for the base term and four for the gun use). Sentence was suspended and defendant was placed on probation for a period of five years with the usual terms and conditions and on the condition that she pay $500 to the restitution fund and reimburse Latasha's family for any out-of-pocket medical expenses and expenses related to Latasha's funeral. Defendant was also ordered to perform 400 hours of community service. The court did not impose any jail time as a condition of probation.

## DISCUSSION

By using a firearm in the commission of the crime, defendant was presumptively ineligible for probation under Penal Code section 1203, subdivision (e)(2), which prohibits a grant of probation in cases where a firearm

---

wanted to emphasize how dangerous the area was, and that he could not do business there much longer.

[7]The probation report also reveals that Latasha had suffered many painful experiences during her life, including the violent death of her mother. Latasha lived with her extended family (her grandmother, younger brother and sister, aunt, uncle and niece) in what the probation officer described as "a clean, attractively furnished three-bedroom apartment" in South Central Los Angeles. Latasha had been an honor student at Bret Hart Junior High School, from which she had graduated the previous spring. Although she was making only average grades in high school, she had promised that she would bring her grades up to her former standard. Latasha was involved in activities at a youth center as an assistant cheerleader, member of the drill team and a summer junior camp counselor. She was a good athlete and an active church member.

[8]The probation officer's ultimate conclusion and recommendation was that probation be denied and defendant sentenced to state prison.

is used "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation."[9]

In determining whether the statutory limitation on probation has been overcome, the court is required to use the criteria set forth in California Rules of Court, rule 413.[10] If the court finds the case to be an unusual one, it must then decide whether to grant probation, utilizing the statutory criteria set forth in California Rules of Court, rule 414.[11]

---

[9]Penal Code section 1203, subdivision (e)(2), provides: "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons: . . . . (2) Any person who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he or she has been convicted."

[10]Rule 413 [Probation Eligibility When Probation is Limited], adopted January 1, 1991, provides:

"(a)   [**Consideration of Eligibility**] The court shall determine whether the defendant is eligible for probation.

"(b)   [**Probation in Unusual Cases**] If the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of justice would best be served,' or a substantially equivalent provision, the court should apply the criteria in subdivision (c) to evaluate whether the statutory limitation on probation is overcome; and if it is, the court should then apply the criteria in rule 414 to decide whether to grant probation.

"(c)   [**Facts Showing Unusual Case**] The following facts may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate:

"(1)   [*Facts relating to basis for limitation on probation*] A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including:

"(i)   The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence.

"(ii)   The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense.

"(2)   [*Facts limiting defendant's culpability*] A fact or circumstance not amounting to a defense, but reducing defendant's culpability for the offense, including:

"(i)   Defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence.

"(ii)   The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation.

"(iii)   The defendant is youthful or aged, and has no significant record of prior criminal offenses."

[11]"Criteria affecting the decision to grant or deny probation [rule 414] include:

"(a)   Facts relating to the crime, including:

"(1)   The nature, seriousness, and circumstances of the crime as compared to other instances of the same crime.

"(2)   Whether the defendant was armed with or used a weapon.

"(3)   The vulnerability of the victim.

■ The standard for reviewing a trial court's finding that a case may or may not be unusual is abuse of discretion. (*People* v. *Cazares* (1987) 190 Cal.App.3d 833, 837 [235 Cal.Rptr. 604], citing *People* v. *Edwards* (1976) 18 Cal.3d 796, 807 [135 Cal.Rptr. 411, 557 P.2d 995].) The standard is the same for review of an order granting probation. ■ "Probation is an act of clemency which rests within the discretion of the trial court, whose order granting or denying probation will not be disturbed on appeal unless there has been an abuse of discretion." (*People* v. *Henderson* (1964) 226 Cal.App.2d 160, 163 [37 Cal.Rptr. 883].) It is the duty of the trial court to exercise its discretion "unswayed by partisan interest, public clamor, or fear of criticism" (Cal. Code Jud. Conduct, canon 3A(1)), regardless of whether the decision may be unpopular or controversial.

■ Our function is to determine whether the respondent court's order is arbitrary or capricious, or " 'exceeds the bounds of reason, all of the circumstances being considered.' " (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237].) The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. (*People* v. *Cazares, supra,* 190 Cal.App.3d at p. 837.) In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65]; *People* v. *Axtell* (1981) 118 Cal.App.3d 246, 259 [173 Cal.Rptr. 360].)

---

"(4)  Whether the defendant inflicted physical or emotional injury.

"(5)  The degree of monetary loss to the victim.

"(6)  Whether the defendant was an active or passive participant.

"(7)  Whether the crime was committed because of an unusual circumstance, such as great provocation, which is unlikely to recur.

"(8)  Whether the manner in which the crime was carried out demonstrated criminal sophistication or professionalism on the part of the defendant.

"(9)  Whether the defendant took advantage of a position of trust or confidence to commit the crime.

"(b)  Facts relating to the defendant, including:

"(1)  Prior record of criminal conduct; whether as an adult or juvenile, including the recency and frequency of prior crimes; and whether the prior record indicates a pattern of regular or increasingly serious criminal conduct.

"(2)  Prior performance on probation or parole and present probation or parole status.

"(3)  Willingness to comply with the terms of probation.

"(4)  Ability to comply with reasonable terms of probation as indicated by the defendant's age, education, health, mental faculties, history of alcohol or other substance abuse, family background and ties, employment and military service history, and other relevant factors.

"(5)  The likely effect of imprisonment on the defendant and his or her dependents.

"(6)  The adverse collateral consequences on the defendant's life resulting from the felony conviction.

"(7)  Whether the defendant is remorseful.

"(8)  The likelihood that if not imprisoned the defendant will be a danger to others."

We conclude, based on the record presented, that the court did not abuse its discretion in determining that the statutory conditions for probation were satisfied in this case.

## 1. *Determination That This was an Unusual Case.*

The respondent court stated three reasons why it found this to be an unusual case: "First, although the basis for the presumption against probation is technically present, that is, a gun was used, I find that it does not apply. The statute [Penal Code section 1203, subdivision (e)(2)] is aimed at criminals who arm themselves and go out and commit crimes. It is not aimed at shopkeepers who lawfully possess firearms for their own protection. Secondly, the defendant has no recent record, in fact, no record at all of committing similar crimes or crimes of violence. Third, I find that the defendant participated in the crime under circumstances of great provocation, coercion, and duress."

The District Attorney construes the court's first comment as an explicit finding by the court that Penal Code section 1203, subdivision (e)(2) did not apply in this case. To the contrary, the court specifically acknowledged the applicability of this section: "There is in this case, as counsel has stated quite correctly, a presumption against probation because a firearm was used, and as [the District Attorney] said, in order to overcome that presumption, the court must find this to be an unusual case as that term is defined by law." The court then commenced to apply the criteria set forth in rule 413 of the California Rules of Court.

In determining whether or not a case is "unusual," the court may consider "[a] fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case . . . ." (Cal. Rules of Court, rule 413(c)(1)(i).)[12] This includes facts which may indicate that the circumstances of the case are substantially different from the circumstances typically present in other cases involving the same probation limitation. The court observed that the firearm use limitation typically involves "criminals who arm themselves and go out and commit crimes." Here the circumstances are very different. Defendant was a shopkeeper who lawfully possessed a firearm for protection from ongoing crime involving gang members. There was no evidence that the defendant or her

---

[12]Rule 413(c)(1)(i) states: "The following facts may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate: [¶] (1) A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including: [¶] (i) The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence."

family kept the gun in the store because of any intention to act unlawfully. ▉ The fact that here the gun was used by a shopkeeper possessing it for a lawful use is sufficient distinction from the circumstances "typically present" in other gun use cases to justify the court's finding that this was an "unusual case." The court then properly applied the second part of rule 413(c)(1)(i), noting that the defendant had "no recent record, in fact, no record at all of committing similar crimes or crimes of violence."

In determining that this was an "unusual case" which overcame the statutory presumption against probation, the court also found that "the defendant participated in the crime under circumstances of great provocation, coercion, and duress." We assume the court was relying upon California Rules of Court, rule 413(c)(2), which allows the court to consider "[a] fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense . . . ." ▉ The District Attorney argues that the court improperly used this factor because the provocation in this case (i.e., the blows struck by Latasha) was successfully urged by defendant as a defense in the trial, as evidenced by the fact that the jury reduced the charge from second degree murder to voluntary manslaughter. In other words, defendant got her break from the jury.

This argument has no merit. The burden of proving second degree murder was on the District Attorney and he did not prove it to the satisfaction of the jury. Defendant was convicted of and sentenced for voluntary manslaughter. Provocation did not amount to a defense to voluntary manslaughter. Therefore, provocation can be considered under California Rules of Court, rule 413(c)(2)(i). If the District Attorney's argument were correct, the District Attorney could routinely overcharge defendants and then argue that any facts which would tend to defeat the overcharging must be ignored in probation decisions.

## 2.   *Criteria Affecting Probation.*

Having found that this was an "unusual case" within the meaning of California Rules of Court, rule 413, the court determined that defendant was eligible for probation. The court then granted probation to defendant after applying the criteria prescribed by California Rules of Court, rule 414, including the following: the manner in which the crime was carried out did not demonstrate criminal sophistication (rule 414(a)(8)), defendant would not be a danger to others if she were not imprisoned (rule 414(b)(8)), the crime was committed because of an unusual circumstance such as great

provocation which is unlikely to recur (rule 414(a)(7)),[13] and defendant had no prior criminal record (rule 414(b)(1)).[14] There are other criteria under rule 414 which the court could consider although it did not explicitly so state on the record. These criteria weigh heavily in favor of defendant.[15] It is evident from the record that the court did in fact conduct the "overall evaluation" intended by the Judicial Council when it adopted rule 414.[16]

The court commented at sentencing that it did not "believe that Mrs. Du would be here today if the gun that she grabbed for protection had not been altered." The court elaborated: "This was a gun that had been stolen from the Du family and had been returned to them shortly before the shooting. The court has been presented with no evidence, and I do not believe that Mrs. Du knew that the gun had been altered in such a way as to . . . make it an automatic weapon with a hairpin trigger. Ordinarily a .38 revolver is one of the safest guns in the world. Ordinarily, a woman Mrs. Du's size would have to decide consciously to pull the trigger and exert considerable strength to do so, but that was not true of the gun used to shoot Latasha Harlins. I have serious questions in my mind whether this crime would have been committed at all but for the altered gun."

Seizing upon this language, the District Attorney contends that the respondent court based its decision to grant probation in part upon the belief that defendant did not intentionally shoot the victim. According to the District Attorney, this demonstrates a clear disregard of the jury's verdict that the killing was intentional.

---

[13]The full text of rule 414(a)(7) reads: "Whether the crime was committed because of an unusual circumstance, such as great provocation, *which is unlikely to recur*." (Italics added.) Although the court did not mention the underlined language in applying rule 414, it is obvious from the overall comments made by the court that it believed this incident was a one-time occurrence.

[14]The court also stated it was required to "determine the vulnerability of the victim" in deciding whether or not probation is appropriate. (Rule 414(a)(3).) The fact that a victim was particularly vulnerable is a factor which the court may use to aggravate the defendant's prison term. (Rule 421(a)(3).) In the context of rule 413(a)(3), a court could consider the fact that the victim was particularly vulnerable as one criterion against granting probation. In the present case, the court appears to have made a finding that the victim was not particularly vulnerable. The court observed that the victim had "used her fists as weapons just seconds before the shooting" and commented that Latasha was not justified in her "assault on Mrs. Du."

[15]For example, the court could consider defendant's willingness and ability to comply with the terms of probation (rule 414(b)(3)); her ability to comply with reasonable terms of probation, as indicated by her age, education, health, mental faculties, family background and ties, and employment history (rule 414(b)(4)); and the likely effect of imprisonment on defendant and her family (rule 414(b)(5)).

[16]The Advisory Comment to rule 414 states: "The decision whether to grant probation is normally based on an overall evaluation of the likelihood that the defendant will live successfully in the general community. Each criterion points to evidence that the likelihood of success is great or small. A single criterion will rarely be determinative; in most cases, the sentencing judge will have to balance favorable and unfavorable facts."

The record does not support the District Attorney's interpretation of the court's remarks. After making the statement relied on by the District Attorney, the court went on to say: "Did Mrs. Du react inappropriately to Latasha Harlins? Absolutely. . . ." Nowhere in the record does the court say that the killing was an accident or that it was not unlawful and intentional. The District Attorney cannot meet his burden by taking the court's comments out of context and disregarding other language which does not support his position. A trial court's judgment is presumed to be correct and to be based on legitimate sentencing objectives. Isolated or ambiguous remarks by the trial court do not overcome that presumption. The party attacking the judgment must clearly and affirmatively demonstrate that the trial court relied on improper considerations. (*People* v. *Axtell, supra,* 118 Cal.App.3d at p. 259.)

By finding defendant guilty of voluntary manslaughter instead of murder, the jury found that defendant killed without malice aforethought. (CALJIC No. 8.37.) The court interpreted the jury's verdict to mean that the killing was unlawful and intentional, but was committed in the heat of passion.[17] It is obvious that the point the court was making was that if there had been time for reflection the crime might not have occurred. In view of the fast-moving chain of events (the entire confrontation took only 35-40 seconds), even a few seconds could have been critical.[18]

### 3. *General Sentencing Guidelines.*

The court prefaced its remarks at the sentencing hearing by explaining that in imposing sentence it was required to consider (along with other applicable rules) the general sentencing guidelines set forth in California Rules of Court, rule 410.[19] Applying those guidelines, the court concluded that defendant was not a danger to society (rule 410(a)) and that a state prison

---

[17]The jury was given CALJIC No. 8.42, which provides in pertinent part: "The question to be answered is whether or not, at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment."

[18]In its opposition to the petition, the respondent court stated that "had the gun used by defendant not been altered, and had defendant not been able to pull the trigger without exerting considerable force, then perhaps there would have been time for deliberation and reflection so as to prevent defendant from acting as a result of sudden quarrel and heat of passion."

[19]Rule 410 provides that "General objectives of sentencing include:
"(a)   Protecting society.
"(b)   Punishing the defendant.
"(c)   Encouraging the defendant to lead a law abiding life in the future and deterring him from future offenses.
"(d)   Deterring others from criminal conduct by demonstrating its consequences.

sentence was not necessary either to encourage defendant to lead a law-abiding life (rule 410(c)) or to isolate her in order to prevent her from committing other crimes (rule 410(e)). With respect to rule 410(g), achieving uniformity of sentencing, the court stated that such uniformity was impossible to achieve because each voluntary manslaughter case involves a uniquely different factual situation.

■ The District Attorney asserts that the court gave no consideration to other portions of California Rules of Court, rule 410 which would have impacted less favorably on defendant, and concludes that the court focused only on the defendant and not the crime. The District Attorney specifically contends that the court misapplied rules 410(b) (whether a state prison sentence was needed to punish defendant),[20] 410(d) (whether its sentence would deter others from criminal conduct by demonstrating its consequences), and 410(g) (uniformity of sentencing). On the latter point, the District Attorney points to statistics which show that even in voluntary manslaughter cases where probation is granted, the majority of defendants receive some jail time as a condition of probation.

We reject the District Attorney's contention that the court misapplied California Rules of Court, rule 410. First, the court is presumed to have considered all relevant criteria enumerated in the rules unless the record affirmatively demonstrates otherwise. (Cal. Rules of Court, rule 409.)[21] Second, rule 410 specifically acknowledges that an analysis of all the factors set forth in the rule may lead to inconsistent results, and that the court is entitled to consider which objectives are of primary importance in the particular case (fn. 9 *ante*). The court did so here.

Third, the District Attorney cannot demonstrate, merely by reciting statistics, that the court abused its discretion by not imposing jail time as a condition of defendant's probation. "For example, if 97 percent of all defendants convicted of driving while under the influence of alcohol or drugs are not (or are) sentenced to jail, that does not establish an abuse of

"(e) Preventing the defendant from committing new crimes by isolating him for the period of incarceration.

"(f) Securing restitution for the victims of crime.

"(g) Achieving uniformity in sentencing.

"Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judges shall consider which objectives are of primary importance in the particular case.

"The sentencing judge should be guided by statutory statements of policy, the criteria of these rules, and the facts and circumstances of the case."

[20]The court did give consideration to rule 410(b), whether a state prison sentence was needed to punish defendant, when it conducted the analysis required by rules 413 and 414.

[21]Rule 409 provides: "Relevant criteria enumerated in these rules shall be considered by the sentencing judge, and shall be deemed to have been considered unless the record affirmatively reflects otherwise."

discretion regarding a particular appellant, regardless of whether he is part of the 97 percent or the 3 percent. Abuse of discretion must be demonstrated based on the facts of the particular case being reviewed, and not on a statistical label." (*People* v. *Preyer* (1985) 164 Cal.App.3d 568, 574 [210 Cal.Rptr. 807].)

Furthermore, the Legislature has decreed that where a defendant is convicted of certain specified crimes,[22] the court must, except in unusual cases, impose a jail term as a condition of probation. By not including voluntary manslaughter in those crimes, the Legislature afforded trial courts the discretion to grant probation without a mandatory jail sentence as a condition thereof. The respondent court's decision not to impose jail time in this case was within the guidelines set by the Legislature.

## CONCLUSION

The decision of the trial court must be within broadly defined guidelines. Those guidelines allow a sentencing court to grant probation in a manslaughter case, even where a firearm is used, and to forego imposing a jail term as a condition of probation. Such a decision may indeed be controversial. Nevertheless, the only issue to be resolved on appellate review is whether the trial court exercised its discretion in a manner which was "arbitrary, capricious, or beyond the bounds of reason." We conclude, on the basis of the entire record, that the respondent court did not abuse its discretion.

## DISPOSITION

The petition for writ of mandate is denied.

Boren, J., concurred. Grignon, J., concurred in the result.

A petition for a rehearing was denied May 20, 1992, and the opinion was modified to read as printed above. Petitioner's application for review by the Supreme Court was denied July 16, 1992.

---

[22]Those crimes include: kidnapping, kidnapping of a child under 14, or kidnapping for the purpose of committing certain sex offenses (Pen. Code, § 208); kidnapping for ransom or extortion (Pen. Code, § 209); looting (Pen. Code, § 463); specified crimes against a public transit vehicle or occupant (Pen. Code, § 1203.055); sale of cocaine or heroin, as defined in Health and Safety Code sections 11352, 11379.5 (Pen. Code, § 1203.076); weapons offenses (Pen. Code, § 1203.095); and possession of a concealed firearm with a prior conviction of any felony (Pen. Code, § 12025).