Filed 8/7/13  P. v. Lopez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>JORGE A. LOPEZ,<br><br>     Defendant and Appellant. | G046933<br><br>(Super. Ct. No. 10CF1711)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard F. Toohey, Judge.  Affirmed.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

Jorge A. Lopez was found guilty of second degree murder after he crushed Marcus Nieto's chest with a concrete block as he lay defenseless on the ground. The trial court sentenced Lopez to 16 years to life in prison. On appeal, Lopez maintains the trial court abused its discretion by denying him probation, finding the case was not "unusual" under Penal Code section 1203, subdivision (e)(1).[1] We affirm the judgment.

I

Lopez and his girlfriend of two years, Mercedes Esperanza Garcia Blanco, were homeless and they went early one morning to an encampment near a Santa Ana construction site to get some sleep. They were "coming down" from having used methamphetamine three days earlier. They talked to Ramon Fuentes at the encampment. Lopez, Blanco, and Fuentes obtained methamphetamine and smoked it in Fuentes's van. Later, Lopez left Blanco in the encampment to obtain more methamphetamine. He returned several hours later with scratches on his face.

While Lopez and Blanco were sitting on a mattress, Nieto and another man walked into the encampment. Lopez stood up and confronted them stating, "You guys are backstabbing me." Lopez then punched Nieto, who fell to the ground. The other man ran away. Lopez picked up a nearby 16 pound piece of concrete, lifted it over his head, and dropped it on Nieto. Lopez picked up and threw the same concrete block several times, hitting Nieto's face and chest, while Nieto lay on the ground. Eventually, Blanco was able to pull Lopez away from Nieto, and they left the scene in Fuentes's van. Blanco recalled Lopez was "angry and laughing" at the time.

Fuentes drove them to Lopez's aunt's home. Lopez showered and washed the blood off his white tennis shoes. Blanco asked Lopez why he hit Nieto, but Lopez did not respond. Lopez later told Blanco she had not "seen anything yet" and he was used to doing "this."

---

[1] All further statutory references are to the Penal Code.

That evening police discovered Nieto dead, lying on the ground with a concrete block near his head. The police later determined Nieto's DNA was on the block. The police also searched Lopez's aunt's home and recovered the clothing and white tennis shoes Lopez wore the day of the murder. The clothing also contained blood matching Nieto's DNA.

A forensic pathologist conducting Nieto's autopsy determined the cause of death was blunt force trauma and abdominal hemorrhaging due to a ruptured artery. The pathologist noted Nieto also had a blood alcohol level of .46, but this level of intoxication was not the immediate cause of his death. The pathologist concluded Nieto's fatal injuries were consistent with a 16 pound concrete block having been thrown onto his chest. On cross-examination, the pathologist acknowledged literature describing posttraumatic apnea that may cause death and occurs when there is combination of head trauma and high alcohol blood levels. The pathologist also agreed a blood alcohol content of .46 percent could be lethal to a normal person without any other trauma.

For Lopez's defense, his counsel presented testimony from Santa Ana police officer Dean Fulcher, who attended the autopsy. He confirmed his report did not mention Nieto's high blood alcohol level or posttraumatic apnea as a cause of death. Fulcher explained the forensic pathologist did not mention these things, but told Fulcher the cause of death was from the rupture of blood vessels. Harry James Bonnell, the former chief medical examiner for the City of San Diego, testified on Lopez's behalf, stating the cause of death was acute alcohol intoxication. Based on Nieto's eye fluid samples, Bonnell opined Nieto's blood alcohol content was greater than .48 percent at the time of his death and such a significant toxicology result should have been listed as a contributing cause of his death.

The information charged Lopez with murder by use of a deadly weapon, but the jury found Lopez guilty of second degree murder by the use of a dangerous weapon. (§§ 187, subd. (a); 12022, subd. (b)(1).) The probation department prepared a

3

sentencing report about Lopez's background, family, and criminal history. The probation officer noted that when asked about the crime, Lopez indicated the trial witnesses had lied, he and Nieto were drunk that day, and he never intended for things to occur the way they did. Nevertheless, Lopez stated he "felt horrible about what occurred, and he did not know the victim died until the police talked to him." Lopez "stressed what happened was an accident," but he believed God put him in custody to force him to reflect upon his life and "realize what is important." He begged for another chance and for the court to be "merciful" because his children needed him. The probation officer opined Lopez was not remorseful.

The probation officer also reported Lopez had no prior criminal convictions, but he had been arrested for domestic violence, public intoxication, and possession of drug paraphernalia. In addition, while in custody, he assaulted a fellow inmate. The probation officer opined Lopez's drug and alcohol use might have been one contributing factor, as it also appeared Lopez had "a propensity towards violence, which [was] another concern in regard to community safety in this matter." As for Lopez's children, the probation officer observed Lopez admitted he had not seen his youngest daughter, who was 11 years old, and sadly there was no indication Lopez's children were a priority in his life.

The probation officer concluded Lopez was presumptively ineligible for probation because his murder conviction involved a deadly weapon. The officer discussed the factors relevant to granting probation, concluding the circumstances of the case did not weigh in favor of granting probation: "[T]he crime is not substantially less serious than circumstances typically present in other cases, is not less serious than a prior conviction, the crime was not committed under circumstances of great provocation or duress, was not committed because of a mental condition, and [Lopez] is neither youthful nor aged. [¶] [Lopez's] behavior presents a serious danger to the community, and his

4

past history is not indicative of a person who would comply with community supervision if not in custody. Further, [Lopez] has an Immigration and Customs Enforcement hold . . . which will result in his deportation upon his release from custody, and render him unavailable for community supervision on a local level."

Lopez filed a sentencing brief arguing there were facts showing his was an unusual case, arguing the murder weapon was simply a chunk of concrete, he was intoxicated and did not intend for Nieto to die, and he did not have a criminal record. The prosecutor filed a sentencing brief stating this was not an unusual case because Lopez showed his violent nature before, during, and after the attack. The prosecutor focused on the fact Lopez bragged about the murder to his girlfriend, saying, "'You haven't seen nothing yet, this is what I'm used to doing.'" The prosecutor noted there was no evidence Lopez committed the crime under circumstances of great duress or provocation because after hitting Nieto once in the face, he was rendered unconscious and posed no threat to Lopez. The prosecutor concluded probation was not warranted because Lopez's "willingness to use violence even when his victim [was] helpless [made] him a danger to society."

The trial court agreed and sentenced Lopez to 16 years to life in prison. In making its ruling, the court explained, "[Lopez] is not eligible for probation unless the court finds that this is an unusual case [and] the interest of justice would best be served by granting probation. [¶] And the court does not find that that presumption [against probation] has been rebutted, this limitation is not substantially less serious [¶] This concrete block that [Lopez] used, he used to crush into the chest of this defenseless man on the ground, [is an] extremely violent act. There's no way the court could, under any circumstances in good faith grant probation in the case. [¶] I might note that [Lopez] is not legally in the country. [¶] [It is] documented that he has substantial use of alcohol and methamphetamine which makes him a danger to society. He[] talks about his children needing him. He's got . . . five children. And it's clear that [due to] his

5

methamphetamine use and alcohol use [he] gave them limited support. His father and Martha Gutierrez basically are victims of this matter also."

## II

Lopez argues the trial court abused its discretion in denying his request for probation. He asserts the trial court minimized or ignored the factors that strongly supported consideration of probation in the interests of justice and his was an "unusual" case within the meaning of section 1203 and California Rules of Court, rule 4.413(c) (hereafter, rule 4.413). Specifically, Lopez contends his intoxication at the time of the crime, the spontaneous nature of the murder, his lack of criminal convictions, and his remorse demonstrated he met the criteria for a grant of probation. He concludes, "it appears the trial court acted arbitrarily in finding only that [he] committed an 'extremely violent act' and in commenting on his substance abuse as a factor which 'makes him a danger to society' without weighing in the many positives about [him] personally, and the attenuating circumstances of the offense . . . ." Based on our review of the record, it cannot be said the court abused its discretion.

Section 1203, subdivision (e), provides, "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall *not be granted* to any of the following persons: [¶] (1) . . . [A]ny person who has been convicted of . . . murder, attempt to commit murder, . . . and who was armed with the weapon at either of those times." (Italics added.)

Rule 4.413(b) explains, "If the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of justice would best be served,' or a substantially equivalent provision, the court should apply the criteria in (c) to evaluate whether the statutory limitation or probation is overcome: and if it is, the court should then apply the criteria in rule 4.414 to decide whether to grant probation." In other words, the court's first step is to evaluate whether the case is sufficiently "unusual" to overcome the statutory limitation on probation. Only if the defendant is

6

deemed eligible for probation should the court consider the criteria listed in rule 4.414 regarding the decision to grant or deny probation.

To assist the trial court, rule 4.413(c) is divided into two subsections: (1) "Facts relating to basis for limitation on probation," and (2) "Facts limiting defendant's culpability." Rule 4.413(c)(1) states it may be an "unusual case" when the facts serving as "the basis for the statutory limitation on probation, although technically present, [are] not fully applicable to the case. . . ." Rule 4.413(c)(1) provides one lengthy example: Probation may be appropriate when, "(A) The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, *and* the defendant has no recent record of committing similar crimes or crimes of violence; *and* [¶] (b) The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, *and* the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense." (Italics added.) In short, when a defendant does not have any prior convictions, this provision would apply if the court determines his or her crime was "substantially less serious" than other murders committed with deadly weapons.

Rule 4.413(c)(2), "Facts limiting defendant's culpability" provides the court may also consider facts or circumstances that did not amount to a defense but reduce "the defendant's culpability for the offense . . . ." It lists three possible circumstances. The first one concerns defendants committing crimes "under circumstances of great provocation, coercion, or duress . . . ." (Rule 4.413(c)(2)(A).) This subdivision is inapplicable based on the facts of this case and Lopez's defense the killing was accidental.

The second category relates to crimes "committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a

7

condition of probation[.]"  (Rule 4.413(c)(2)(B).)  The third factor limiting a defendant's culpability is his age:  "The defendant is youthful or aged, and has no significant record of prior criminal offenses."  (Rule 4.413(c)(2)(C).)

The trial court's findings as to whether there are unusual circumstances, as with the court's decision to grant or deny probation, is reviewed for an abuse of discretion.  (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831 (*Du*).)  "'An order denying probation will not be reversed in the absence of a clear abuse of discretion.  [Citation.]  In reviewing the matter on appeal, a trial court is presumed to have acted to achieve legitimate sentencing objectives in the absence of a clear showing the sentencing decision was irrational or arbitrary.  [Citations.]' [Citation.]"  (*People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1091.)

In his sentencing brief, Lopez argued there were facts showing his was an unusual case because the crime was "substantially less serious than the circumstances typically present in other cases involving the same probation limitation . . . ."  (Rule 4.413(c)(1)(A).)  He focused on the nature of the murder weapon, arguing it was merely a chunk of concrete that was not brought to the crime scene and no other weapons were used.  He also argued, "The blows to the face and body (not the abdomen) were not sufficient to cause death."  In making these statements, we assume Lopez sought to mitigate the circumstances of the murder based on the fact his weapon was unsophisticated and capable of also causing non life-threatening injuries.

On appeal, Lopez expands his argument to include several factors set forth in rule 4.413.  As in his sentencing brief, Lopez begins by asserting the murder was less serious than other murders.  (Rule 4.413(c)(1)(A).)  He offers the following explanation: The murder is less serious than others because he did not intend to kill Nieto and he was very remorseful for his actions.  Moreover, Nieto's inebriation was a substantial contributor to his death and there was evidence Lopez did not plan to kill Nieto because

8

he did not come "'armed'" in the usual sense." He adds, "[T]he presence of the concrete block was nothing but fortuitous, an object of chance."

However, we cannot reweigh the evidence. Our task is to determine if the court abused its discretion in ruling the circumstances of the murder were not substantially less serious than other murders. The trial court stated, "This concrete block that [Lopez] used, he used to crush the chest of this defenseless man on the ground, [is an] extremely violent act. There's no way the court could, under any circumstances in good faith grant probation in the case."

We conclude, the court's ruling is amply supported by the record. Lopez repeatedly threw a heavy piece of concrete onto a defenseless man's head and chest, killing him. He did not drop a rock one time, accidently crushing the victim's chest. We agree with the trial court's assessment the murder was particularly vicious and brutal. Immediately afterwards, Lopez laughed and later boasted about his aggressive behavior. Although the concrete block may have been a weapon of chance, Lopez's conduct during and after the murder amply support he will continue to be a danger to society if not incarcerated.

Lopez faults the court for focusing on the violent nature of the murder and his substance abuse rather than other positive attributes relating to the crime that were in his favor. "'A trial court may minimize or even entirely disregard mitigating factors without stating its reasons.' [Citation.] Further, unless the record affirmatively reflects otherwise, the trial court will be deemed to have considered the relevant criteria, such as mitigating circumstances, enumerated in the sentencing rules. [Citation.]" (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1637.) It was reasonable for the trial court to downplay Lopez's statements of remorse, lack of criminal history, lack of intent to kill, and the victim's levels of intoxication considering the undisputed fact Lopez essentially stoned to death an unconscious man for no apparent reason. In denying Lopez probation, the trial court clearly stated its reasons, properly focusing on the seriousness of his crime

9

and reasonably concluding Lopez was a danger to others. "We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation .]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 910.)

Lopez relies on *Du, supra*, 5 Cal.App.4th 822, where a woman convicted of voluntary manslaughter with a firearm received probation, and argues the facts of his conviction are much less egregious. But the facts of *Du* are readily distinguishable. Further, exercise of discretion by its very nature suggests that different courts may reasonably arrive at different decisions, even on the same facts. (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1771.) It cannot be said the trial court abused its discretion in declining to grant Lopez a probationary sentence.

Alternatively Lopez cites to rule 4.413(c)(1)(B), asserting the court should have relied on this factor and found him eligible for probation. He argues this subdivision of the rule is relevant anytime the current offense is *less serious than a prior* felony offense and, therefore, should also apply when a defendant has no prior felony offenses. He suggests the subdivision applies to those who are not "habitually violent persons." He has misconstrued the meaning of rule 4.413(c)(1)(B). It provides the court may consider probation when the current offense is less serious than a prior felony conviction "that *is the cause* of the limitation on probation." (Italics added.) Accordingly, this subdivision only applies when the probation limitation is due to the nature of a prior conviction. In other words, it permits the court considering minor offenses to consider probation *despite* a defendant's serious criminal history. The provision has no application to defendants lacking a criminal history. In the case before us, it is Lopez's *current offense* of murder with a deadly weapon that is the cause of the limitation on probation, not a prior offense. The provision is inapt.

10

On appeal, Lopez also refers to rule 4.413(c)(2)(B), permitting probation when the offense was committed due to a "mental condition not amounting to a defense" and requires the defendant would "respond favorably to mental health care and treatment." Without providing supporting authority, Lopez asserts that being under the influence of alcohol and methamphetamine qualifies as a mental condition under rule 4.413(c)(2)(B). We disagree. Certainly intoxication and drug usage can result in a temporarily altered or diminished mental state. However, there is no legal or logical basis to treat voluntary drug/alcohol usage the same as a diagnosed mental health condition, such as depression or schizophrenia. A drug or alcohol rehabilitation program encompasses much more than mental health care and treatment. We conclude this subdivision is also inapt because there is no evidence Lopez was mentally ill or required mental health care.

Finally, Lopez asserts probation was warranted because he was "youthful" and had no significant record of prior criminal offenses and therefore fell under the preview of rule 4.413(c)(2)(C). That subdivision of the rule authorizes the trial court to consider probation in the unusual case involving a "youthful" or "aged" novice offender. Although not defined, the terms "youthful" and "aged" clearly contemplate the two ends of the spectrum of adulthood. On the one end is the "20-something," unworldly offender who may have naively committed a crime or is a good candidate for rehabilitation. On the other end of the spectrum, is a first time offender nearing the end of his or her life, and consequently is not likely to have the means or opportunity to reoffend. Thirty-five-year-old Lopez falls somewhere in the middle of the spectrum, and for this reason, we conclude the subdivision was not intended to apply to his circumstances. The court did not abuse its discretion by failing to consider application of rule 4.413(c)(2)(C).

11

III

The judgment is affirmed.


                                        O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.