Filed 1/20/15  P. v. Underwood CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

| | |
|---|---|
| THE PEOPLE, | C075156 |
| Plaintiff and Respondent, | (Super. Ct. No. CM037700) |
| v. | |
| KEITH RYAN UNDERWOOD, | |
| Defendant and Appellant. | |

Defendant Keith Ryan Underwood pleaded no contest to shooting at an inhabited dwelling (Pen. Code, § 246)[1] and assault with a firearm (§ 245, subd. (a)(2)).  Defendant also admitted to committing his crimes for the benefit of a street gang in violation of section 186.22, subdivision (b)(1).  The trial court sentenced defendant to an aggregate term of 13 years in state prison.

On appeal, defendant contends the trial court abused its discretion in refusing to grant him probation and in sentencing him to the upper term on his conviction for

---

[1] Undesignated statutory references are to the Penal Code.

1

shooting at an inhabited dwelling. We conclude the trial court did not abuse its discretion in sentencing defendant and affirm the judgment.

*A. Factual Background*

On October 2, 2012, Butte County Sheriff's deputies responded to reports of a shooting in front of a convenience store. When they arrived, a witness told them the witness had seen a red Chevy Impala with three male passengers parked in front of the store. The men got out of the Impala and ran toward a brown Buick. Shots were fired and both vehicles drove away. Another witness thought a third vehicle may have been there, and yet another witness reported that several children were in the area when the shooting began.

Deputies searched the property and found several .380-caliber shell casings on the side of the convenience store, as well as several nine-millimeter shell casings in the parking lot. A witness had his truck parked in the convenience store parking lot; the rear and passenger windows each had a three-inch bullet hole in them and were shattered. A bullet also penetrated two interior bedroom walls of a nearby family home.

Soon after the shooting, deputies stopped a brown Buick. Ricky and Fredy Caudillo were inside the Buick. Deputies searched the vehicle and found a safe, a semiautomatic handgun, and a firearm magazine. Ricky (a member of the Biggs Gridely Sureño street gang) gave the deputies his version of the shooting at the convenience store.

According to Ricky, as he drove into the parking lot, he noticed the red Chevy Impala. Then, while he was putting gas in the Buick, three Norteño gang members ran toward him and Fredy yelling derogatory slurs at them (e.g. "scrap" and "nigger"). As

_____

[2] We note that defendant's argument in his opening brief contains only one citation to the record. That citation is at page 15 of the brief, and is used only to identify a quote from the trial court judge. This is less than helpful.

2

the Norteño gang members approached him and Fredy, Ricky took a .380-caliber handgun from his pocket and started shooting toward them (though not directly at them). One of the Norteños shot back at Ricky. The surveillance video from the convenience store was consistent with Ricky's version of events.

Deputies later traced the Impala to Epifanio Reynoso's residence. Reynoso told deputies that he sold the vehicle to defendant; defendant paid half the price of the car up front and agreed to pay the rest later. Sometime after defendant bought the Impala, however, he contacted Reynoso and told him the car "got fucked up." Reynoso met defendant and inspected the car. According to Reynoso, there was a bullet hole in the passenger door trim and the car was painted white. Defendant told Reynoso, "I got caught up . . . I'm stuck, I don't know what to do." Reynoso took the car back from defendant.

Deputies later interviewed defendant. Defendant admitted his involvement in the shooting. Defendant said he drove his friends Santino Gonzalez and Silvano Maldonado (both documented Norteño gang members) to the convenience store to buy some beer. He parked the Impala in the parking lot and the three of them walked toward the front of the store.

Meanwhile, according to defendant, another car drove up to the gas pump and the occupants started yelling at defendant, Gonzalez, and Maldonado in Spanish. Gonzalez and Maldonado walked toward the other vehicle, but defendant stayed behind. The other car then drove through the parking lot and the driver showed them a gun saying, "I've got something for you." The driver sped through the parking lot and came to a stop; the driver got out, took a "bladed stance," and pointed his gun at defendant and his friends. The driver's gun malfunctioned, giving defendant time to run for cover behind the Impala. The driver then shot the Impala six or seven times.

As he was being shot at, defendant said he reached into the Impala and pulled out a Glock nine-millimeter semiautomatic handgun, along with ammunition, and loaded the

3

gun. Defendant then stood up and fired an unknown number of shots at the ground in front of the other shooter. Defendant told the deputies he was not trying to shoot the other person but shot downward, hoping the other shooter would stop shooting at him. "One of the shots fired by [defendant] . . . hit a house, went through the exterior wall of the house, and lodged in an interior wall."

Defendant told deputies that after the shooting, he and his friends drove off and hid the Glock because he was "scared." Defendant also drove the Impala to a friend's house and left it there because he "didn't want nothing to do with it after that." Defendant said he went back to retrieve the Glock the next day but it was gone. He said only Maldonado and Gonzalez knew where he hid the gun.

A week later, according to defendant, Reynoso showed up at his house and asked defendant to pay the remaining balance due on the Impala or give the car back. Defendant gave back the car. Defendant claimed the car was still red when he gave it back to Reynoso and denied having any body work done to the car. Defendant also denied being a member of any Norteño gang but admitted he was an "associate."

Deputies obtained a search warrant and searched defendant's residence. During their search, deputies found a .25-caliber semiautomatic handgun with one round in the chamber. They also found several red bandanas, shirts, a jacket, and three pairs of shoes, all of which were consistent with items commonly possessed and worn by Norteño gang members.

*B. Procedural Background*

Defendant was arrested and charged with shooting at an inhabited dwelling (§ 246), shooting at an occupied motor vehicle (§ 246), and two counts of assault with a semiautomatic firearm (§ 245, subd. (b)). The People further alleged defendant committed his crimes for the benefit of a street gang (§ 186.22, subd. (b)(1)(C)) and personally used a firearm during the commission of his crimes (§ 12022.53, subd. (b)).

4

The trial court later granted the People's motion to amend the information to include a charge of assault with a firearm (§ 245, subd. (a)(2)) and to amend one of the gang enhancement allegations reducing it from a 10-year enhancement (§ 186.22, subd. (b)(1)(C)) to a five-year enhancement (§ 186.22, subd. (b)(1)(B)). Defendant then pleaded no contest to shooting at an inhabited dwelling (§ 246) and assault with a firearm (§ 245, subd. (a)(2)); he also admitted the amended gang enhancement (§ 186.22, subd. (b)(1)(B)). The remaining charges and allegations were dismissed with a *Harvey*[3] waiver.

The trial court denied defendant's request for probation, finding defendant was eligible for probation only if the court found unusual circumstances and the court found the circumstances were not unusual. The court further found that even if defendant were eligible for probation, the court would not grant probation "because of the nature, seriousness, and circumstances of the case. The manner in which the crime was carried out demonstrated criminal sophistication, specifically after the offense and disposing of the weapon, as well as the car, as well as the defendant's prior performance on probation was unsuccessful."

Accordingly, the trial court sentenced defendant to an aggregate term of 13 years in state prison: the upper term of seven years for shooting at an inhabited dwelling (§ 246); one year (one-third the middle term) for assault with a firearm (§ 245, subd. (a)(2)); and five years for the gang enhancement (§ 186.22, subd. (b)(1)(B)). In imposing the upper term on defendant's conviction for shooting at an inhabited dwelling, the trial court stated it reviewed "the circumstances in aggravation set forth in Rule of Court 4.421, as well as the circumstances in mitigation set forth in 4.423."

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754.

With regard to defendant's conviction for shooting at an inhabited dwelling, the trial court found that, on balance, the circumstances in aggravation outweighed the circumstances in mitigation. "In aggravation, the manner in which the crime was committed indicates planning, sophistication, and professionalism, and his prior performance on probation was not satisfactory. In addition, on that count the victims-- potential victims were particularly vulnerable. I don't find any factors in mitigation." With regard to imposing the middle term on defendant's conviction for assault with a firearm, the court found the factors in mitigation and those in aggravation "balance out."

Defendant appeals.

DISCUSSION

*A. Denial of Probation*

Defendant contends the trial court abused its discretion in denying him probation. He recognizes he was ineligible for probation under section 1203, subdivision (e)(2) unless the court found unusual circumstances, but argues such circumstances are present here. He stresses that he committed the crimes in self-defense, he had no prior offenses or history of violence, and his criminal history was "minimal."

As this court has previously noted, "The granting of probation is not only an act of clemency, but also a bargain made with the probationer. 'The purpose and hope are, of course, that through this act of clemency, the probationer may become reinstated as a law-abiding member of society. . . . The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment.' " (*People v. Arata* (2007) 151 Cal.App.4th 778, 783, quoting *People v. Johnson* (1955) 134 Cal.App.2d 140, 143.)

Here, defendant was presumptively ineligible for probation because he used a deadly weapon during the commission of his crimes. (§ 1203, subd. (e)(2).) When a defendant is presumptively ineligible for probation, the trial court must determine whether the presumption is overcome and the interests of justice would be served by a

6

grant of probation. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 830 (*Du*).) In deciding whether to grant or deny probation, the trial court enjoys broad discretion. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) A decision denying probation will be reversed only on a showing of abuse of discretion. (*Du,* at p. 831.) To establish abuse, the defendant must show that, under the circumstances, the denial of probation was arbitrary or capricious. (*Ibid*.)

The trial court did not abuse its discretion in denying probation. Rather than acting in an arbitrary and capricious manner, the trial court articulated careful consideration of defendant's claim that he acted in self-defense. The court also reviewed the probation report, which included defendant's criminal record, and defendant's statement in mitigation. Defendant's criminal record included three misdemeanor convictions, going back to 2000, and includes a violation of probation. The court balanced those claims and factors against the serious nature of the crimes defendant committed, defendant's efforts to dispose of the Glock as well as the car, and the fact that defendant's prior performance on probation was unsatisfactory. On balance, the trial court concluded that even if the circumstances were "unusual," the court would not grant defendant probation. We find no error.

*B. The Upper Term*

Defendant further contends the trial court abused its discretion in imposing the upper term on his conviction for shooting at an inhabited dwelling. We conclude the court acted within its discretion.

A trial court's sentencing decision is reviewed under the abuse of discretion standard. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.]" (*Ibid*.)

7

In sentencing defendant to the upper term, the trial court found the manner in which defendant committed his crime indicated planning, sophistication, and professionalism. Moreover, the court noted that defendant's prior performance on probation was not satisfactory, and the defendant's potential victims were "particularly vulnerable." The court found no mitigating circumstances.

Defendant argues the court erred in relying on the vulnerability of defendant's victims in imposing the upper term. We need not reach that claim, because it is undisputed that defendant was on probation at the time he committed this crime and violated a prior probation as well. The record also supports the trial court's finding that defendant's crime showed planning and sophistication; not because defendant "planned" the shooting but because of his efforts to dispose of the gun and the car after the shooting.

Defendant further argues the court "ignored" the mitigating circumstances because the trial court said, "I don't find any factors in mitigation." On the contrary, the record reflects the trial court considered the mitigating circumstances set forth in California Rules of Court, rule 4.423, as well as those identified in defendant's statement in mitigation:

"(2)  The victim was an initiator of, willing participant in, or aggressor or provoker of the incident;

"(3)  The crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur;

"(4)  The defendant participated in the crime under circumstances of coercion or duress, or the criminal conduct was partially excusable for some other reason not amounting to a defense;

"(5)  The defendant, with no apparent predisposition to do so, was induced by others to participate in the crime;

"(7)  The defendant believed that he or she had claim or right to the property taken, or for other reasons mistakenly believed that the conduct was legal;  [¶] . . . [¶]

8

"(1)  The defendant has no prior record, or has an insignificant record of criminal conduct, considering the recency and frequency of prior crimes."

We thus interpret the trial court's statement to mean it found none of the mitigating factors asserted by defendant to be applicable--not that it ignored the mitigating factors.  Such a finding by the trial court is supported by the record.

Whether defendant was the first to shoot his gun, the witness statements and videotape illustrate that defendant and his cohorts began the altercation by running at Ricky and Fredy, yelling racial slurs.  The only evidence defendant acted in self-defense is his own self-serving statements.  Moreover, defendant drove to the convenience store with a gun in his car, along with ammunition, while already on a grant of probation.  These circumstances belie defendant's claim that he committed his crimes under unusual circumstances not likely to occur in the future.

Defendant also attempted to minimize his criminal record but the reality is that he has one.  His criminal history may be filled with misdemeanors but it goes back to 2000 and includes a violation of probation.  In addition, he was on probation when he committed these crimes.

Defendant also argued the victims provoked "the incident."  Defendant was convicted of shooting into an inhabited dwelling; the family members in the dwelling were his victims, not Ricky and Fredy, and there is no evidence the family participated in the shooting.  There also is no evidence defendant believed that shooting into a home was legal.  On the contrary, his efforts to get rid of the gun and the car tend to show he knew he had committed a crime.

That defendant was 33 years old and had young children to support were facts included in the probation report as well as the statement in mitigation.  Accordingly, the court considered those as well.  The court apparently was not persuaded that these factors should result in a mitigated sentence.

9

A single aggravating circumstance will support an upper term sentence.  (*People v. Osband* (1996) 13 Cal.4th 622, 728.)  Here, the court relied on at least two appropriate aggravating circumstances.  The court also considered the mitigating circumstances offered by defendant and found them inapplicable.  Under these circumstances, the trial court was well within its discretion in imposing sentence as it did.

DISPOSITION

The judgment is affirmed.

     BLEASE     , Acting P. J.

We concur:

     ROBIE     , J.

     DUARTE     , J.