Filed 5/12/15  P. v. Latham CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C076215 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF13598) |
| v. | |
| IRITA MARIE LATHAM, | |
| Defendant and Appellant. | |

Defendant Irita Marie Latham pleaded no contest to false personation (Pen. Code, § 529, subd. (a)(3)) and unlawfully taking or driving a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)).  In exchange for her plea, defendant was placed on probation under Proposition 36 (the Substance Abuse and Crime Prevention Act of 2000) and placed immediately into a residential treatment program.  Defendant later violated the terms of her probation, probation was revoked, and the trial court denied her request to reinstate probation, sentencing her to three years eight months in "local prison."

1

Defendant appeals.  She contends the trial court abused its discretion in denying her request to reinstate probation and in imposing the upper term.  We affirm.

## FACTS

**Underlying Offense**

On or about October 9, 2013, John S. reported his car stolen.  A California Highway Patrol officer saw defendant driving the stolen car and executed a traffic stop.  During the traffic stop, defendant identified herself as Stefanie Nicole Sears (defendant's sister).  Officers found marijuana in defendant's purse.

Defendant told the officers she bought the car for $500 but could not produce a bill of sale.  She also told the officers she had recently moved to California and did not yet have a California driver's license.  Defendant was taken into custody; at the county jail officers discovered her true identity.  Defendant was later charged with falsely personating another person (Pen. Code, § 529, subd. (a)(3)), driving on a suspended license (Veh. Code, § 14601.2, subd. (a)), and unlawfully taking or driving a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)).

On October 30, 2013, defendant entered into an "open plea," pursuant to which she pleaded no contest to false personation.  In exchange, the People agreed to dismiss the charge of driving on a suspended license and dismiss with a *Harvey* waiver the charge of driving a vehicle without the owner's consent.[1]  The parties each also agreed to waive time for judgment and sentencing to allow defendant the opportunity to participate in a residential treatment program.

Following execution of that plea agreement, the People determined defendant was a "good candidate" for drug court.  Accordingly, on December 3, 2013, defendant withdrew her initial plea and pleaded no contest to falsely personating another person

---

[1] *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

and driving a vehicle without the owner's consent.  In exchange for her plea, defendant was granted Proposition 36 probation and referred to drug court.  As part of her Proposition 36 probation, defendant was released on her own recognizance into a residential treatment facility.  Defendant acknowledged that should she violate the terms of her release, the court would sentence her to three years eight months in local prison.

The trial court then admonished defendant:  "You're being given a real opportunity, and that opportunity arises from [the People's counsel] really going out of her way to get you into this program.  I want you to understand that."  Defendant replied, "I know."

**Violation of Release Agreement**

Two days later, on December 5, 2013, defendant left the residential treatment facility without permission from the staff or her probation officer.  Accordingly, the court revoked defendant's "own recognizance release" and issued a warrant for her arrest.

On February 25, 2014, law enforcement officers found defendant in bed with a man in an outbuilding on residential property.  Officers searched the outbuilding and found "five hypodermic needles in a brown eye glass case on a coffee table near the bed."  The syringes were filled with liquid heroin.  Defendant was arrested and taken into custody.

On February 27, 2014, counsel was appointed, defendant was remanded into custody without bail, and the matter was referred to the probation department (the department) for a presentence report.

**The Department's Presentence Report**

*Defendant's interview and personal history*

Before preparing the presentence report, a deputy probation officer (the deputy) interviewed defendant.  When the deputy asked defendant why she used her sister's name when she was stopped by law enforcement, defendant said she assumed there was an

outstanding warrant for her arrest and she did not want to go to jail. She claimed she did not know the car she was driving was stolen.

The deputy asked defendant why she left the residential treatment facility without permission; she claimed she left because she was "having anxiety regarding her mother's health." Defendant claimed her mother was in the hospital and she left the facility to "be by her side." Her mother passed away a few weeks later; defendant could not remember the exact date but believed it was before Christmas.

Defendant also told the deputy she did not want the court to grant her probation because "she [did] not feel she [could] comply with the conditions of supervision." She admitted she did not want to follow the directions of her probation officer and said she would rather go to prison. She said that while she had been in custody she was able to "kick" her heroin addiction and felt she would never use controlled substances again. She said she did not need treatment for substance abuse and prison would help her stay substance-abuse free.

The department investigated further and learned that defendant's mother was still alive and living in Mt. Vernon, Illinois. The department then received a letter from defendant, wherein she explained that two and a half weeks after she left the residential treatment facility, a woman named Viola Stopyra passed away. Stopyra was not defendant's biological mother, but defendant claimed she "regarded Viola as her mother." The department learned that a Viola Stopyra had died in the hospital on January 14, 2014.

According to the presentence report, defendant consumed alcohol and marijuana for the first time when she was seven years old. Defendant began using methamphetamine when she was 10 years old. By the time she was 11, defendant was drinking alcohol on a daily basis; her drinking would " 'ebb and flow,' with her abuse of methamphetamine."

4

Defendant stopped using methamphetamine when she was 18 years old; at the same time her consumption of alcohol decreased. About that time, however, defendant developed an addiction to prescription pain medication. Defendant began using methamphetamine again in 2009, after her marriage ended. At the time of her arrest, defendant was injecting heroin daily; she admittedly injected herself on the day of her arrest.

### Defendant's criminal history

Defendant was first convicted of a crime in November 2007, when she was convicted of driving under the influence of alcohol, with a blood-alcohol content at or above .08 percent. (Veh. Code, § 23152, subd. (b).) Defendant was given three years of probation, which she violated four times. In May 2010 she was convicted of misdemeanor resisting an executive officer (Pen. Code, § 69), and in July 2010 she was convicted of resisting public or peace officers in the discharge of their duties (Pen. Code, § 148, subd. (a)(1)) and possession of a hypodermic needle or syringe (Bus. & Prof. Code, former § 4140).

In November 2010, while on probation, defendant was arrested and charged with falsely representing herself as another person to a peace officer (Pen. Code, § 148.9), resisting a peace officer, and possession of methamphetamine, a controlled substance (Health & Saf. Code, § 11377, subd. (a)).[2] Defendant was then convicted of burglary (Pen. Code, § 459) in January 2011 and sentenced to 16 months in state prison. In July 2011 defendant was convicted of two more counts of burglary and sentenced to another 16 months in state prison.

On February 7, 2012, defendant was released from prison and placed on "post release community supervision." Defendant absconded on March 19, 2012. Defendant

---

[2] Those charges were dismissed with a *Harvey* waiver in the resolution of another matter.

was found on September 12, 2012, and served a "10 day flash incarceration." Six days after her release from the flash incarceration, defendant absconded again. She was found on May 25, 2013, and ordered to serve a 120-day "custodial commitment."

In December 2013, after she was arrested on the charges for which she was ultimately convicted in this matter, the trial court revoked defendant's postrelease community supervision for failing to obey all laws and for "drug use." Then, in February 2014, while she was released on Proposition 36 probation in this matter and after she absconded from the residential treatment facility, defendant was charged with unlawful possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) and possession of drug paraphernalia (Health & Saf. Code, former § 11364.1).

On March 5, 2014, while she was incarcerated in the county jail, jail deputies found 0.1 gram of methamphetamine on defendant's person and another 9.4 grams of methamphetamine on another inmate in her housing group.

### *Sentencing recommendation*

The department reported defendant was presumptively ineligible for probation because of her two prior felony convictions. (Pen. Code, § 1203, subd. (e)(4).) The department's report listed numerous factors weighing against a grant of probation: (1) defendant was an active participant in the crime of which she was convicted (Cal. Rules of Court, rule 4.414(a)(6));[3] (2) this was defendant's fourth felony conviction (rule 4.414(b)(1)); (3) defendant was on community supervision at the time the offense was committed and she had numerous violations of probation and parole (rule 4.414(b)(2)); (4) defendant stated she was not willing to comply with the terms of probation (rule 4.414(b)(3)); (5) defendant had an extensive criminal history, multiple violations of probation, and failed to address her long-standing substance abuse despite

---

[3] All references to rules are to the California Rules of Court.

6

intervention (rule. 4.414(b)(4)); (6) prison would not adversely impact defendant as she had been in prison before (rule 4.414(b)(5)); and (7) "defendant [would] not suffer any overly adverse collateral consequences from additional felony convictions" (rule 4.414(b)(6)).

The department found only two factors in favor of granting probation, that the nature of the crime "when compared with other instances of the same crimes, fall[s] within the mean" (rule 4.414(a)(1)) and defendant's criminality does not pose a danger to the public (rule 4.414(b)(8)).

The department recommended defendant be sentenced to the middle term. In so recommending, the department noted the following aggravating factors: (1) "defendant's prior convictions as an adult are numerous or of increasing seriousness" (rule 4.421(b)(2)); (2) defendant served a prior prison term (rule 4.421(b)(3)); (3) defendant was on community supervision at the time of the offense (rule 4.421(b)(4)); and (4) defendant's prior performance on probation and community supervision was unsatisfactory (rule 4.421(b)(5)). The department found no mitigating circumstances; however, the department also found "defendant's actions in the present matter are not viewed as an upper term sentence . . . ."

**Sentencing**

Defendant appeared for sentencing on March 24, 2014, arguing for probation to be reinstated. At the outset of the hearing, the trial court noted defendant "tried to pull the wool over everyone's eyes." The court indicated defendant was untrustworthy (noting that defendant's biological mother was still alive despite defendant's claim that she left the residential treatment facility because her mother was dying) and did not "appear to be suitable for anything other than the upper term." Defendant explained (as she had in her letter to the department) that when she referred to her mother dying, she was not referring to her biological mother, but to a woman she considered to be like a mother to her.

7

Defendant also advised the court that after she was interviewed by the department, she learned she was pregnant. Now defendant wanted another opportunity to go to drug court. Defendant claimed her pregnancy gave her a "stronger reason than just herself" to get clean and sober. The trial court was not persuaded.

The court declared defendant ineligible for probation unless there were unusual circumstances. The court then stated, "[t]here's no unusual case finding to be made here due to [defendant's] lack of candor to the [department] and habitual lies indeed listed in 529(a)(3)."

The court continued, "[b]ut, at any rate, there's no reason to reinstate defendant in this matter. She has three felony convictions, all crimes of moral turpitude. 459 second. Three of them. She had one prior prison term 2011, that's an aggravating factor. She commits this crime while she's on post release community supervision. She is unsuitable for anything other than the upper term."

The trial court acknowledged that the department recommended the middle term be imposed; the trial court, however, rejected the recommendation and imposed the upper term of 36 months in local prison on the false personation charge. In so doing, the trial court found the following aggravating factors: (1) defendant lied, putting her sister at risk, because she did not want to go to jail; (2) defendant committed her crime while on postrelease community supervision; (3) defendant has multiple felony convictions; and (4) defendant has performed poorly on probation. The court found no mitigating factors and defendant did not raise any. In addition, the court sentenced defendant to a consecutive eight-month term (one-third the midterm) on the charge of driving a vehicle without the owner's consent.

Defendant appeals; the trial court denied her request for a certificate of probable cause.

8

## DISCUSSION

Citing her pregnancy and decades-long drug and alcohol addictions, defendant contends the trial court abused its discretion in denying probation and in imposing the upper term. Defendant also contends the trial court erred in imposing the upper term, arguing the court relied on inappropriate aggravating factors and ignored the mitigating factors. We reject defendant's contentions.

### Denial of Probation

Because of her three prior felony convictions, defendant was presumptively ineligible for probation; a grant of probation is not permissible "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation." (Pen. Code, § 1203, subd. (e); see *id*. at subd. (e)(4).) In determining whether a case is "unusual," the trial court uses the criteria listed in rule 4.413(c). Even assuming criteria in rule 4.413(c) exist, the trial court may, but is not required to, find the case to be an unusual one. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178.) If the trial court finds the case to be an unusual one, it decides whether to grant probation using the criteria listed in rule 4.414. We apply the abuse of discretion standard in reviewing both determinations. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831 (*Du*).)

" 'Probation is an act of clemency which rests within the discretion of the trial court, whose order granting or denying probation will not be disturbed on appeal unless there has been an abuse of discretion' " (*Du, supra*, 5 Cal.App.4th at p. 831), that is, whether a court's order is arbitrary or capricious, or " 'exceeds the bounds of reason, all of the circumstances being considered.' " (*People v. Warner* (1978) 20 Cal.3d 678, 683.)

In determining defendant's case was not an unusual one, the trial court found defendant was an "habitual li[ar]," noting not only her criminal lies to the police but her lies to the probation department. Whether this was a proper basis for finding defendant's case was not an unusual one, the court went on to find that "at any rate, there's no reason to reinstate defendant in this matter." Thus, even if the case were an unusual one, the

9

court determined probation was unwarranted due to defendant's lengthy criminal history (rule 4.414(b)(1)), her prior prison term (rule 4.414(b)(1)), and the fact she committed this crime while on community supervision (rule 4.414(b)(2)). We conclude this was an appropriate exercise of the court's discretion.

**The Upper Term**

Defendant further contends the trial court erred in imposing the upper term. Defendant did not, however, object to the court's imposition of the upper term in the trial court, so the claim is forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 354-355 (*Scott*).)

Moreover, defendant cannot argue for the first time on appeal that the trial court improperly relied on an aggravating factor that was also an element of the crime. (*Scott*, *supra*, 9 Cal.4th at p. 353.) Nor can she argue the trial court erred in failing to consider mitigating circumstances that she never raised in the trial court. (*Ibid.*)

Though defendant forfeited her claims, even had she preserved them, we find no error. Numerous factors supported the trial court's imposition of the upper term, including defendant's multiple felony convictions and the fact that she had previously served a prison term. A single factor supports a sentencing choice. (*People v. Osband* (1996) 13 Cal.4th 622, 730.)

### DISPOSITION

The judgment is affirmed.

          RAYE         , P. J.

We concur:


     ROBIE     , J.


     DUARTE    , J.