Filed 8/5/24  P. v. Jones CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082082 |
| v. | (Super.Ct.No. BLF2200282) |
| CHRISTOPHER ANGEL JONES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles G. Rogers, Judge.  (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Christopher Angel Jones appeals from the trial court's order denying his motion to dismiss his prior strike offense under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  For the reasons set forth *post*, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

A.      <u>PROCEDURAL HISTORY</u>

On November 23, 2022, a felony complaint charged defendant with possession of a firearm by a person prohibited due to a prior felony conviction under Penal Code[1] section 29800, subdivision (a)(1) (count 1); possession of ammunition by a person prohibited due to a prior felony conviction under section 30305, subdivision (a)(1) (count 2); and possession of a large capacity magazine under section 32310, subdivision (a) (count 3).  As to counts 1 and 2, the qualifying prior felony was "an offense enumerated in [] section 23515, to wit, a conviction and juvenile adjudication on June 28, 2018 in the Court of the State of California, in and for the County of Riverside of a violation of section 245(a)(1) of the Penal Code."  Moreover, this same conviction under section 245, subdivision (a)(1), served as the basis for the strike prior allegation under sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1).

---

[1]  All statutory references are to the Penal Code unless otherwise specified.

On July 28, 2023, a jury found defendant guilty of counts 1 and 2, but not guilty of count 3. Thereafter, defendant waived a jury trial on the prior conviction and admitted the strike prior.

At the sentencing hearing on September 5, 2023, the trial court denied defendant's *Romero* motion to dismiss his prior strike allegation. The court sentenced defendant to the low term of 16 months, doubled per the prior strike on both counts, then stayed the sentence on count 2 under section 654, for a total term of 32 months.

On September 7, 2023, defendant filed a timely notice of appeal.

B.      FACTUAL BACKGROUND

Detective Kevin McCormick with the City of Blythe Police Department testified that he was assigned to the patrol division on November 21, 2022. Around 7:00 a.m., Detective McCormick "had taken a report of a burglary, a residence located behind a liquor store. It was a fairly extensive burglary." The detective, therefore, "dedicated a good portion of [his] free time to follow up on that burglary and trying to identify potential suspects, locate stolen property, things of that nature." The burglary had occurred about a week prior to that day.

Detective McCormick testified that he went to a location about 300 yards from the liquor store. He described the location as "an old RV trailer that the front wall was removed from to open up basically the side of the trailer it looked like[,] and then a house kind of piecemeal built around it in different segments." Although the detective did not know how many people resided in the trailer, he called it a "crash pad at times." The

3

detective testified that prior to November 21, 2022, he had been to the location about "four or five" times to investigate other activities.

Around 7:00 a.m., Detective McCormick, with four or five other officers, went to the house. When asked why so many officers went to the location, the detective replied: "Like I said, when I've been there before, sometimes there's a lot of people there, kind of sleeping in different various rooms, locations around the property. So not knowing if I'm going to encounter ten people or four people, we decided to take a number of officers for our safety in case we did end up encountering a lot of people."

Detective McCormick then testified that he went to the crash pad because he specifically wanted to speak with defendant. The detective stated he knew defendant from "prior contacts on patrol." After the officers arrived at the house, they saw that the front door was cracked open and could see a person asleep on the couch. After calling out "'Blythe Police Department'" and defendant's name multiple times, the person stirred and moved the blanket back to reveal his face. The officers recognized the person was defendant.

After Detective McCormick called defendant's name again, defendant "started moving around under the blankets." The detective testified that it concerned him because "[t]he way it looked to me from how the blankets moved, it was pretty clear what—obviously I can't see through blankets. But from the way the blankets were moving, it looked to me as though [defendant's] hands were moving towards his

4

waistband underneath the blanket." After "several orders to stop moving" and to show his hands, defendant ultimately showed his hands and was detained.

Thereafter, the officers found an unregistered and loaded semiautomatic handgun with a high-capacity magazine on top of a couch cushion where defendant's stomach was when he was lying face down, hand-cuffed on it. The firearm had seven live rounds in the magazine and a live round in the chamber.

When the officers found the firearm, defendant said "something to the effect of 'That's not mine' or 'It's not my gun,' something like that." At the police station, however, defendant admitted that he found the firearm in a vacant field behind where the burglary had taken place. Defendant had planned to get rid of it but decided to keep it for protection. Defendant admitted that he knew the firearm was loaded. "Did you ever, oh, so you unloaded it and made sure it had ammo and then reloaded it and all that, made sure it was working?" Defendant responded, "Yes, sir." Defendant went on to admit that he had the firearm in his waistband while he slept, and that he reached for it while the officers were there. Shortly thereafter, however, defendant stated that he did not have the firearm in his waistband. Instead, it was on the couch next to him under the covers.

**DISCUSSION**

On appeal, defendant contends that the trial court's denial of defendant's "Motion to Strike the Strike was an abuse of discretion where an examination of his current offense, prior strike conviction, and his background, character and prospects shows that he should have been deemed outside the spirit of the three strikes law." For the reasons

5

set forth *post*, we disagree with defendant and find that the court did not abuse its discretion in denying defendant's *Romero* motion.

A.        PROCEDURAL BACKGROUND

1.        *Defendant's Sentencing Memorandum*

In a sentencing memorandum filed on August 16, 2023, defendant asked the court to strike his prior strike conviction under *Romero*, *supra*, 13 Cal.4th 497.

In support of his request, defendant described the "nature of the prior strike offense." Defendant provided that on April 27, 2018, defendant and Luis Diaz (the victim), who had known each other since they were children, had an argument over a television that the victim's brother had purchased from defendant. The brother still owed money to defendant. While in an alleyway, defendant punched the victim, knocking him to the ground. Defendant then took his backpack and walked away. The victim had a cut on his nose. When defendant was arrested, the police discovered a five-inch speaker on his person that they believed was used in the attack; the victim suffered a small cut to the nose with circular impressions to the skin around it which appeared to match the surface pattern of the speaker. Defendant pled guilty to the charged offense and was granted probation. However, after sustaining convictions for violating Vehicle Code section 2800.2 (felony reckless driving during flight from police) and Penal Code section 148, subdivision (a)(1) (misdemeanor resisting arrest), defendant was sentenced to 16 months in state prison.

In the memorandum, defendant next noted that the "instant offenses are not violent or serious and are vastly different from the strike prior. No testimony or evidence was presented on any victim assaulted with or harm[ed] by the weapon [defendant] possessed. Officer McCormick discovered the firearm laying on the sofa under [defendant] as he slept. There is no testimony that [defendant] currently was having any problems with anybody else."

In the memorandum, defendant then described his past. Defendant "experienced an extremely unstable, negatively influenced, and neglected childhood. As a young child, [defendant] suffered due [to] his mother's homelessness. [Defendant] spent significant portions of his childhood living in a tent and not attending school. When his mother finally was able to get an apartment, [defendant] began attending school at 10 years old. [Defendant] did not excel in school and his mother allowed him to drop out of school at the age of 13. [Defendant], at a young and tender age, was homeless on the streets of Blythe. Unable to read or write, and [with] no stable residence, [defendant] had no chance to succeed. [Defendant's] homelessness led to him overvaluing the $25 owed to him in the strike case and [led] to increased physical risk. The attacks and increased risk that [defendant] suffered led to him thinking he needed protection."

*The People's Opposition*

On August 18, 2023, the People filed its opposition to defendant's *Romero* motion and sentencing memorandum. In the opposition, the People argued "the court should deny the defendant's motion because the public safety concerns outweigh the mitigating

7

factors." (All caps omitted.) The People contended "that the Court's dismissal of said [strike] would in fact endanger the Blythe community because, simply put the defendant is a violent individual with a repeated pattern of, at best, disregarding law enforcement orders, and at worst, endangering law enforcement officers." The People went on to note that defendant also had a prior felony conviction under Vehicle Code section 2800.2, and a misdemeanor conviction under Penal Code section 148, subdivision (a)(1), in 2020. "These two recent convictions coupled with the facts of the instant case all support the contention that [defendant] presents a significant safety risk to law enforcement." In sum, the People opposed defendant's request based on defendant's continued criminal activity and inability to follow the rules of supervised release.

2.      *The Probation Officer's Sentencing Recommendation*

On August 29, 2023, the probation department filed its sentencing recommendation. The report stated that defendant had lived in Riverside County since 2006 and was homeless. Defendant has two children; their whereabouts were not reported. Defendant's father is unknown, and his mother is deceased. The mother raised defendant and the family was homeless for years during his childhood. Defendant told the probation officer that he had never had full-time employment but has held short-term jobs. Defendant's formal education was limited to attending elementary school.

Defendant reported using alcohol since he was 13 years old, and using tobacco since he was 12. Defendant stated he used marijuana since he was six years old. At 20, defendant started using amphetamine; he last used in April 2023.

The report provided defendant's criminal history. On June 28, 2018, defendant was convicted of violating Penal Code section 245, subdivision (a)(1). The court granted probation for 36 months. The court terminated probation and sentenced defendant to four years in state prison. On September 29, 2020, defendant was convicted of violating Vehicle Code section 2800.2, and sentenced to 16 months in state prison. On the same day, defendant was convicted of misdemeanor violation of Penal Code section 148, subdivision (a)(1), and sentenced to 44 days in jail.

During an interview, defendant told the probation officer that defendant was born in San Bernardino, and lived in that area until he was approximately 10 years old; the family then moved to Blythe. Defendant and his sisters, Ashley and Chyanne, grew up together with their mother who was disabled; she had only one leg. Defendant named seven additional siblings; they did not reside together but "they grew up 'on the streets' together." Defendant stated that his father was around sporadically because he frequently served time in jail or prison. Defendant, his siblings, and mother were homeless for several years and lived in a tent without electricity or running water. When defendant was six years old, he panhandled, begged for money, and collected cans to raise money to purchase food and necessities. Defendant did not attend school regularly until the family moved to Blythe when he was 10 years old. Defendant attended school up to the third grade and dropped out. In school, defendant exhibited behavioral problems and received special education services for a learning disability.

Defendant stated that he met Ashley Gibson when he was 18 years old. They were in a serious relationship for three years and had two children together. Defendant told the probation officer that they broke up due to Ashley's heavy drinking. Defendant had not been actively involved in his children's lives. However, defendant had started to communicate with them.

Defendant reported that he was in fair physical and mental health. He stated he never had a physical or psychological examination but was "open to undergoing both assessments."

3.  *The Sentencing Hearing*

At the hearing, the trial court stated it had read the submitted documents related to the motion. The trial court then granted defense counsel's request to "read a couple quick sections" from defendant's statement.[2] Defendant stated: "'I've learned a lot about myself as a man, as a son, as a person. I can honestly say I've come to a point in my life where I'm ready for positive change. And I know that first starts with taking the steps to commit myself to live a positive and productive life.'"

Defense counsel brought up defendant's exemplary behavior during the trial. Moreover, counsel stated that defendant was 22 years old when he committed the prior strike, and "it doesn't in any way indicate a seeking out of a weapon in order to do any harm to anybody. [¶] It seems to be there was a conversation that became heated, and in that conversation he threw a punch. While he threw that punch, there was a five-inch

---

[2] Defense counsel indicated that while defendant had been in custody, "he asked another inmate to take down some words for him."

10

speaker that was in his hands.  That speaker ended up making contact with the victim in that case, causing a small laceration.  That was the extent of the injury.  It was one punch and then left the scene."

As for the current offense, defense counsel noted that the charge is possession of a firearm.  While defendant was unemployed, defendant was washing rocks, "he washed rocks out in the area looking for minerals, anything of value."  While he was washing rocks, defendant found the firearm and kept it.

In response, the prosecutor recognized defendant's background and stated that "[n]o one should have to live the way he lives as a homeless individual[.]"  The prosecutor then went on to state, "[t]he problem is, Your Honor, and the most important point I'd like to make, is the defendant was on parole when he committed this offense.  So his strike prior is not dated.  It's, I think, I think it was less than four years old at the time of the commission of the offense."  And, in the prior case, defendant "flunked out of probation and was sentenced to state prison [] for four years on the underlying 245."

The prosecutor went on to state, "I feel sorry for [defendant].  And yes, I'm sure part of his reasoning and intent in having that firearm was some level of self-protection.  But that, feelings of feeling bad for the defendant is not to be considered when the Court looks at striking a strike prior for purposes of sentencing.  [¶]  So based on the recency of the prior alone, Your Honor, the People are opposing the Court striking the strike prior for purposes of sentencing.  I think it's just too recent.  He was on parole for that strike prior when he committed this offense."

The trial court stated that the strike prior occurred in "June of 2018," and defendant "was initially granted probation." However, "in 2020[,] he then picked up the 2800 and the 148 and was sent to prison[,]" which was "also the violation of probation in the 245 case[.]"

Defense counsel informed the court that when defendant violated probation for the strike prior, there were "substance abuse issues." Therefore, they "tried to get [defendant] into Drug Court. Due to his inability to read and inability to follow along with the course book they were requiring and do the readings of the program, [defendant] wasn't able to succeed within that program. So he ended up getting sentenced to state prison."

Thereafter, the court recognized that it "does have the authority to dismiss the strike prior for sentencing purposes. . . . [¶] In the context of dismissing a strike prior for sentencing purposes, the guiding principles are in *Williams*[3] and *Romero*. I think *Williams* establishes three criteria. One is that we look at the nature of circumstances of the current offense. Second, we look at the nature and circumstances in the strike prior. Third, we look at the particulars of the defendant's background, character, and prospects. [¶] The overarching question is whether, considering those factors, [defendant] may be considered as a person who falls within or outside the purpose of the Three Strikes law. [¶] The Court's sentencing discretion, therefore, is limited, as are all discretionary calls, by the law which grants that discretion."

---

**3** *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*).

The trial court pointed out that defendant's "prior was an assaultive crime. It was a felony level aggravated assault. In this case, the firearm that he was in possession of was loaded at the time that he had possession of it." Moreover, the court recognized that defendant "had a grant of probation; violated that probation by picking up a 2800.2 and the 148; and has been observed, was on parole at the time of the commission of the current offense."

The court went on to state that "if we look at the circumstances and nature of the current case, it's of—possession of a loaded firearm. His prior being a crime of violence, albeit five years old, but he was not successful in the intervening act, period of time, and picked up another offense, which frankly shows a disregard for social values."

The court then weighed defendant's background and character. The court stated, "I also need to address what was clear to me and I think clear to the jurors at the jury trial. That is that this gentleman does suffer from some sort of mental or cognitive issue. [¶] He was a gentleman during trial. He testified very respectfully. [¶] I don't know if counsel noticed it, but he misspelled a surname when he was spelling his name. And I—I find that that was a genuine—it was not a contrivance. He wasn't acting when he did that. [¶] Even considering that, I think, as a factor of his background character and prospect, I do not feel it's appropriate to dismiss the strike prior for sentencing purposes; and the defense invitation that I do that is declined."

13

B.    LEGAL BACKGROUND

The Three Strikes law "was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*, *supra*, 13 Cal.4th at p. 528.) Trial courts have the discretion to dismiss "strike" prior convictions in limited cases where the dismissal is "in furtherance of justice." (*Id.* at p. 530; § 1385.)

The court must determine, "whether, in light of the nature and circumstances of [a defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [their] background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though [they] had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.) "A repeat criminal falls outside the spirit of the Three Strikes law only in extraordinary circumstances." (*People v. Anderson* (2019) 42 Cal.App.5th 780, 786.) An unrelenting record of recidivism compels the conclusion that a defendant falls within the spirit of the sentencing scheme. (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320.) Following *Williams*, at p. 148, appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike for defendants where the record did not "manifestly support the striking of a prior conviction[.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)

On appeal, we review a trial court's refusal to strike a prior conviction allegation for abuse of discretion. (*Williams*, *supra*, 17 Cal.4th at p. 162.) Absent a showing that the lower court acted arbitrarily or irrationally, a reviewing court presumes the trial court

14

"acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.) We neither reweigh evidence nor substitute our judgment for that of the trial court. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

C. ANALYSIS

In this case, after the trial court considered the factors under *Williams*, *supra*, 17 Cal.4th 148, it denied defendant's *Romero* motion. For the reasons set forth *post*, we discern no abuse of discretion.

First, defendant argues that although his strike prior is classified as an assault with a deadly weapon, a serious felony, "the actual circumstances of the crime indicate that it was not especially violent in this case." Moreover, defendant argues that his "case was less egregious than other cases of possession of a gun by a felon because, as [defense] counsel pointed out[,] he wasn't carrying the gun on the street. He had it at his residence." As noted *ante*, at the hearing on the motion, defense counsel made a similar argument. Nonetheless, the evidence is clear that the firearm was loaded, with seven rounds in its high-capacity magazine and a live round in its chamber. Defendant was either carrying the loaded firearm in his waistband or lying on top of it. Defendant admitted that he reached for his gun when the officers entered the residence. At the hearing, the court stated "if we look at the circumstances and nature of the current case, it's of—possession of a loaded firearm. His prior being a crime of violence, albeit five years old, but he was not successful in the intervening act, period of time, and picked up

15

another offense, which frankly shows a disregard for social values." The trial court properly considered the gravity of having a loaded firearm, which defendant reached for, when the officers entered defendant's home.

Second, defendant argues that the facts of his "prior conviction for assault with a deadly weapon occurred approximately five years before his current conviction[,]" and "involved a single punch that did not cause a disabling or permanent injury." Here, the trial court was aware of the underlying facts of the strike offense, as provided *ante*. In the prior conviction, defendant did not just swing the speaker at the victim. Instead, defendant struck the victim on the side of the head with the speaker, knocking the victim to the ground. During the hearing on the motion, the trial court recognized that the "prior was an assaultive crime. It was a felony level aggravated assault." Additionally, the court recognized that defendant "had a grant of probation; violated that probation by picking up a 2800.2 and the 148; and has been observed, was on parole at the time of the commission of the current offense." Hence, the trial court properly considered defendant's recidivism when it made its ruling.

Third, defendant contends that the trial court abused its discretion in denying his *Romero* motion because he "was a 27-year-old homeless man who was functionally illiterate and laboring under the burden of drug use, if not addiction, since he was a young child[,]" and "appeared to have a cognitive disability and an educational deficit." At the hearing on the motion, the trial court was aware of defendant's struggles from a young age, acknowledged that defendant suffered from mental or cognitive issues, and

16

commended defendant's behavior during the trial. The court, however, concluded that even considering defendant's background and character, "I do not feel it's appropriate to dismiss the strike prior for sentencing purposes[.]"

Furthermore, to support his contention that the trial court abused its discretion in denying his motion, defendant relies on *People v. Dryden* (2021) 60 Cal.App.5th 1007 (*Dryden*) and *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*). The facts in this case are distinguishable from the facts in *Dryden* and *Avila*.

In *Dryden*, *supra*, 60 Cal.App.5th 1007, the Sixth Appellate District held that a trial court's "strict application of the Three Strikes law . . . resulted in a sentence so out of proportion to the offenses as to be an abuse of discretion." (*Id.* at p. 1013.) In October 2013, the defendant was convicted of two counts of assault with a deadly weapon, which involved the defendant striking "two members of a group of five young men with a bamboo stick, scratching one and raising a welt on the neck of the other." (*Id.* at pp. 1013, 1031.) Prior to these offenses, the defendant suffered three prior strike convictions: a 1989 conviction for residential burglary; a 2005 conviction for assault with a deadly weapon; and a 2007 conviction for residential burglary. (*Id.* at p. 1030.) The trial court denied the defendant's *Romero* motion and imposed a sentence of 25 years to life, consecutive to 15 years. (*Id.* at p. 1016.) The Sixth District concluded the trial court abused its discretion in denying the *Romero* motion because "[t]he trial evidence shows that [the] defendant's criminal behavior here resulted from a late-night, spontaneous altercation between an intoxicated and mentally ill homeless person and a

group of youths," "[t]he record does not support the trial court's conclusion that this nighttime encounter between [the] defendant and the young men outside two fast-food restaurants was similar to [the] defendant's prior strikes which . . . were characterized by either substantial violence or the deliberate entry into homes to steal," and the defendant had a "'history of homelessness, mental health issues, and alcoholism [which] most likely contributed to his actions[.]'" (*Id.* at p. 1031.)

On appeal, the appellate court was concerned about the prison time the Three Strikes penalty added to the defendant's determinate term in light of his age. "[T]he trial court elected to impose a sentence of 25 years to life consecutive to 15 years, de facto life imprisonment for [the] defendant[,] who was 53 years old when sentenced." (*Dryden*, *supra*, 60 Cal.App.5th at p. 1031.) "[H]ad the court struck two or all three of the prior strikes, [the] defendant still would have been exposed to a significant sentence." (*Id.* at p. 1030.) The appellate court then found that "the trial court abused its discretion by denying [the] defendant any meaningful relief from the Three Strikes law." (*Id.* at p. 1032.) Given the emphasis on the defendant's age at sentencing (53 years old) and characterization of his sentence as "tantamount to life in prison," the phrase "meaningful relief from the Three Strikes law" basically translates to a meaningful opportunity for release from prison. (*Id.* at p. 1032.)

In *Avila,* in 2018, the defendant was convicted of attempted second degree robbery and attempted extortion; defendant demanded "rent" money from two sidewalk fruit vendors and then squashed several bags of their oranges. (*Avila*, *supra*, 57 Cal.App.5th at

18

p. 1139.) The defendant admitted to three prior strike convictions: a 1990 second degree robbery and assault with a knife, and a 1992 second degree robbery. (*Id.* at pp. 1140-1141.) The trial court denied the defendant's *Romero* motion and sentenced him to 25 years to life plus 14 years. (*Id.* at p. 1139.)

On appeal, the Second District, Division Three held the trial court abused its discretion because it incorrectly believed that it could not consider the defendant's youth at the time he committed those prior offenses, 18 and 20 years of age respectively, as mitigating factors. (*Avila*, *supra*, 57 Cal.App.5th at pp. 1141-1142.) The appellate court concluded that these facts weighed in favor of granting the *Romero* motion because the strikes "were . . . committed when [the defendant] was of diminished culpability based on his age" (*id.* at p. 1145), and as to the underlying offense "[the defendant] did not use a weapon or otherwise use physical violence against the victims, nor did he make any specific threats. He squashed oranges." (*Id.* at p. 1142.) Furthermore, the appellate court reasoned the sentence imposed "means [the defendant] will likely die in prison," which is problematic because "[t]he length of a sentence is the 'overarching consideration' in deciding whether to strike a prior conviction because the underlying purpose of striking a prior conviction is the avoidance of unjust sentences." (*Id.* at p. 1144.)

The facts in this case are readily distinguishable from the facts in *Dryden* and *Avila*. Here, the denial of the *Romero* motion did not deprive defendant of a meaningful opportunity to be released from prison. Defendant was only 27 when sentenced and was sentenced to the low term of 16 months, doubled to two years eight months, despite the

19

prosecutor's concern. The prosecutor stated that "it is a close call between mid term and low term. I do agree with the Court. I think the Court is well-reasoned. I think you would be well-justified in imposing the low term based on the, we'll call it the mental health/drug abuse/intelligence triad. So I won't scream too much about the low term. [¶] But I will say, last thing I'll say is that, you know, he's a felon. He's not supposed to have a firearm. And he knows that. . . . And yet [he] continued to possess, not only a firearm, but a loaded firearm with eight rounds in it. [¶] . . . [¶] But I will submit it to the Court. I do maintain my position, mid term times two is appropriate. But I definitely understand where the Court is coming from with the low term." Here, had the court granted the *Romero* motion, defendant would have been sentenced to 16 months, unlike 25 years to life imposed on the defendants in *Dryden* and *Avila*. Even if defendant were to serve his entire sentence, he would only be 29 or 30 years old when released from prison, unlike the defendants in *Dryden* and *Avila*, whom the courts expressed concern would die in prison due to the trial court's denial of the *Romero* motions. Additionally, unlike the trial court in *Avila*, the trial court in this case considered defendant's background extensively prior to ruling on the *Romero* motion and sentencing defendant.

In sum, as a reviewing court, we neither reweigh evidence nor substitute our judgment for that of the trial court. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) It matters not how much an appellate court may disagree with a trial court's exercise of discretion, but whether other reasonable minds could have reached the same conclusion. (See *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978.) Here, based on our

review of the evidence and the *Williams* factors, we find that the trial court did not act arbitrarily or irrationally in denying defendant's *Romero* motion.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

MENETREZ
J.

21