Filed 2/28/25  P. v. Solomon CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. VINCENT SOLOMON, Defendant and Appellant. | F086910 (Super. Ct. Nos. 15CMS7345B, 15CMS7201) **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Franson, Acting P. J., Meehan, J. and Snauffer, J.

# INTRODUCTION

This case returns to us after resentencing was conducted in September 2023. Defendant was originally sentenced in 2019 after he was found guilty by a jury of three in-custody offenses in two separate cases: one related to drug smuggling and the other for battery of a correctional officer. The juries both found true defendant had suffered prior serious and/or violent convictions (strikes) within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)),[1] subjecting defendant to two-strike sentences for each offense.[2]

At the resentencing hearing in September 2023, the trial court declined to strike the prior strike convictions under section 1385, subdivision (a). The court imposed an aggregate term of 11 years, consecutive to the determinate term defendant was currently serving for 1997 out-of-custody offenses committed in Sacramento County.

On appeal, defendant argues the trial court abused its discretion in declining to dismiss or strike his prior strikes. Having considered the record and the parties' arguments, we are unable to conclude the trial court abused its discretion in declining to strike defendant's prior strike convictions. We affirm the trial court's judgment.

# FACTUAL BACKGROUND

## I.    Out-of-custody Offenses:  Sacramento County

In 1990, defendant was convicted of robbery (§ 211), and he was sentenced to three years in prison. While on parole for that sentence, defendant committed felony petty theft (§ 666) in 1992 and misdemeanor battery (§ 242) in 1996.

---

[1]    All statutory references are to the Penal Code unless otherwise indicated.

[2]    Defendant's current offenses are not serious or violent convictions within the meaning of section 667.5, subdivision (c), or section 1192.7, subdivision (c), and defendant is subject to two-strike sentences under section 667, subdivision (e)(1), and section 1170.12, subdivision (c)(1). (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).)

In 1998, defendant was convicted of robbery (§ 211), assault (§ 245, subd. (a)(1)), two counts of dissuading a witness (§ 136.1), and obstructing an officer (§ 69). He was sentenced by the Sacramento Superior Court to 27 years 4 months.

## II.    In-custody Offenses

### A.    San Joaquin County

In 1999, while he was serving the sentence for the out-of-custody 1998 offenses, defendant was convicted in San Joaquin County (San Joaquin Super. Ct. case No. TF26514A) of possessing a controlled substance in prison (§ 4573.6), and he received a two-year prison term.

### B.    Kings County

#### 1.    Kings Superior Court Case No. 15CMS7345B

On April 23, 2015, a correctional officer in the investigative services unit at Corcoran State Prison intercepted incoming mail addressed to defendant related to a narcotics investigation, and methamphetamine was discovered inside the mail. The investigation revealed numerous letters where defendant gave instructions to Daniel Sowell for delivery of a controlled substance into the prison. Defendant authorized a $1,000 withdrawal from his inmate trust account to Sowell and, later, defendant received a letter from Sowell with 7.082 grams of methamphetamine inside.

In December 2016, a jury found defendant guilty of two charges: conspiring to possess methamphetamine in prison (§§ 182, subd. (a), 4573.6; count 1), and of bringing narcotics into a prison (§ 4573; count 2). In a bifurcated proceeding, the jury also found true five prior strikes under the Three Strikes law, subjecting defendant to a two-strike sentence (§ 667, subd. (e)(1)). The jury also found true two of the three prior prison term enhancements under section 667.5, former subdivision (b).

3.

### 2.    Kings Superior Court Case No. 15CMS7201

In April 2014, defendant was scheduled to be transferred, and a correctional officer directed him to be handcuffed so that he could be removed from his cell and his property inventoried.  Defendant refused, and told the officer he would not comply, but about a one-half hour later, informed officers he would comply.  Two correctional officers unlocked the food port to defendant's cell, and one officer began to handcuff defendant through the food port.  Defendant grabbed the officer's left arm and pulled, causing the officer's body to bang against the cell door.  The officer sprayed defendant with pepper spray, causing him to release his hold.  The officer stepped away from the food port, and the second officer secured the port door.  Upon jury trial in 2019, defendant was found guilty of battery on a nonconfined person (§ 4501.5), and the jury also found true prior strikes under the Three Strikes law.

## III.   Sentencing in 2019

The two Kings County jury trial cases were sentenced together in 2019.  The court first declined to strike the prior strike convictions under section 1385, subdivision (a), pursuant to *People v. Superior Court* (*Romero*)  (1996) 13 Cal.4th 497 (*Romero*).  In the 2016 drug case (Kings Super. Ct. case No. 15CMS7345B), on count 1, the court imposed double the four-year upper term for a total of eight years, which was then stayed under section 654 (§§ 182, subd. (c)(1), 4573.6).  On count 2, the trial court imposed double one-third the three-year middle term (for a total of two years) consecutive to his Sacramento and Jan Joaquin County cases.  The court also imposed one year for each of the three prior prison term enhancements, staying one under section 654.  In the 2019 battery case (Kings Super. Ct. case No. 15CMS7345), the court imposed a consecutive two-year term (one-third the three-year middle term (§ 4501.5) doubled for the prior strike).

**Resentencing in 2023**

Pursuant to our opinions in separate appeals, defendant was resentenced in 2021 and again in September 2023.[3] At the resentencing in 2023, defense counsel asked the trial court to consider striking defendant's prior strikes, which the trial court declined to do "for the same reasons [as] stated on March 7th, 2019," as it did not "see anything that is new in that request …."

In Kings Superior Court case No. 15CMS7345B, for bringing or sending a controlled substance into prison (§ 4573; count 2), the court imposed the upper term of four years, doubled by the prior strike to eight years, which was designated the principal term. The court reasoned the upper term was justified because defendant has a lengthy criminal history as found true by the jury in both the Kings Superior Court cases. The court also imposed the upper term of four years, doubled to eight years, for count 1, but stayed that sentence pursuant to section 654. As to the subordinate counts, the court imposed a consecutive one-year term for the San Joaquin Superor Court offense (one-third the three-year middle term), and a consecutive two-year term for the battery conviction in Kings Superior Court case No. 15CMS7201 (one-third of the three-year middle term, doubled for the prior strike). The aggregate term imposed for the in-custody offenses was 11 years, consecutive to the term for the 1997 out-of-custody offenses defendant is still serving. (See § 1170.1, subd. (c).)

---

**3** In 2019, defendant filed a separate appeal in both Kings Superior Court cases Nos. 15CMS7245B and 15CMS7201. We issued two separate nonpublished opinions, vacating the sentences but otherwise affirming the judgments: *People v. Solomon* (Mar. 23, 2021, F078997) (*Solomon I*) and *People v. Solomon* (Mar. 24, 2021, F078998) (*Solomon II*). After resentencing in 2021, defendant again filed a separate appeal in both cases, which we consolidated and issued one nonpublished opinion in 2023; we vacated the sentence and remanded for resentencing under Senate Bill No. 567 (2020–2021 Reg. Sess.). (*People v. Solomon* (Feb. 9, 2023, F083264/F083272) (*Solomon III*).) In the current appeal, the People filed a request seeking judicial notice of our nonpublished opinion in *Solomon III* as necessary to understand the context and procedural history, which is hereby granted. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

# DISCUSSION

Defendant contends the trial court abused its discretion in refusing to strike either of defendant's prior strike offenses.

## I.  Additional Background

Prior to resentencing in 2023, defendant filed a brief inviting the trial court to strike his prior strike convictions.  The brief observed that defendant's prior strikes occurred more than 10 years before the current offenses were committed.  Further, defendant noted, even if his prior strikes were stricken, his sentence would still be lengthy; he argued doubling the determinate terms renders his punishment unduly harsh and is not in the interests of justice.

At the 2023 resentencing hearing, the trial court declined to strike defendant's prior strike convictions under section 1385, subdivision (a), for the same reasons it had stated in 2019.

In 2019, the trial court had explained its decision not to strike the prior strike as follows:

> "[Defendant] is here on two cases.  There's [Kings Superior Court case No.] 15CMS7345B where he was convicted by a jury on conspiracy to bring into the prison controlled substances, and Count 2 is a violation of … Section 4573, which is the possession of the controlled substances in the prison.  It was based upon a scheme in which the defendant would mail instructions to the person he referred to as his nephew on how to send drugs into the prison for the defendant.  [¶]  The defendant would send out his instructions as legal mail addressed to an actual California attorney with an actual State Bar number, but use the nephew's address.  The co-defendant would then hide the controlled substances, the methamphetamine, into the purported legal mail packaging and then return the package to [defendant] as a return to sender for an insufficient forwarding address thereby having the drugs being moved back and forth under the fallacy of it being legal mail.
>
> "On April 23rd, 2015, the defendant received a package containing 18.2 grams of methamphetamine while at [Substance Abuse Treatment Facility] State Prison.  On April 27th, 2015, another package was intercepted containing 7.08 grams of methamphetamine, and on May 10th,

6.

2015, the defendant again mailed instructions to his coparticipant directing more drugs be delivered to him.

"In [Kings Superior Court] Case 15CMS7201 the defendant was convicted of violating … Section 4501.5 on April 14th, 2014, and there the jury found the defendant was being moved to [Substance Abuse Treatment Facility] and was informed that he needed to exit his cell and his property inventoried. It caused the defendant to become upset because he did not want anyone to search his property. [¶] When Sergeant Arnett tried to handcuff the defendant, the defendant grabbed the sergeant's arm and twisted his own body pulling the sergeant's arm through the food port and forcing his body into the cell door.

"As far as the *Romero* analysis, I have no real information relating to the underlying facts of his strike convictions. They are old as [defense counsel] points out, 27 and 26 years ago; however, the defendant has been in prison as a result of that conduct from those strike convictions since before December 8, 1997, and has remained in custody but yet continues to engage in criminal and violent conduct.

"The strike offenses were seven years apart; however, the defendant continued with committing crimes and was returned to prison multiple times for violations of parole between the two convictions and the defendant had a significant criminal history before the commission of his strike offenses.

"The defendant has violated his parole at least six times from the 1990 robbery. He committed a felony theft with a prior two months after his first parole for that offense. He committed a battery, which is a violent act, while on parole for both of those crimes. He committed the robbery and witness intimidat[ion], as well as the threatening [of] an executive officer, in 1997, which was approximately two-and-a-half months after his last parole for the 1990 robbery. He committed two more felonies while serving that latter sentence, three of the prior offenses involved acts of violence, the other two involved discouraging or intimidating witnesses, which is an attempt to subvert the legal or criminal justice system to allow him to succeed in criminal endeavors.

"Based upon all that I cannot say that, or it cannot be said that the priors occurred during a single period of aberrant behavior. Having no information about the underlying facts of the priors I cannot say that the defendant has multiple convictions stemming from a single act. For example, sometimes you'll see a individual who commits one stabbing of a

7.

single victim and is convicted of both attempted murder and assault with a deadly weapon. There's no facts to suggest that is the scenario for [defendant].

"I have no information from the parties regarding the victim[']s comments or thoughts upon the motion or their victimization. The defendant's past criminal history is decreasing in seriousness in my opinion, but that may be due in large part to the fact that he remains in prison custody. He does have a history of violence. [¶] It does not appear that he has ever been successful on probation or parole, and instead it appears he has performed remarkably poor on parole with multiple parole violations resulting in his return to prison custody.

"The defendant was able to remain violation-free for a significant time period between his conviction in San Joaquin County's Case TF26514A for possession of a controlled substance while in prison in 1999, and his conviction in 2016 in Kings County Superior Court Case 15CMS7345B for which we're on sentencing today, but that also must be considered in light of the fact the defendant remained in custody during that entire period and that he committed the same crime in Kings County as he did in San Joaquin County suggesting that the defendant did not rehabilitate during that time period.

"Looking at his current crimes, [Kings Superior Court case No.] 15CMS[73]45B is non-violent. It is serious and posed a significant risk to the institution security as it was bringing controlled substances into a prison. It is the same conduct as his prior offense out of San Joaquin County, as well as some other offenses, and notably the defendant was not cooperative with the investigation. [¶] The defendant was a leader in that crime and directed a younger individual to provide the drugs to him, and the amount of the controlled substance was significant in a prison setting.

"In [Kings Superior Court case No.] 15CMS7201 that crime involved violence. The crime was serious considering it was an attack on an officer and in light of what later was discovered in [Kings Superior Court] Case 15CMS7345B. The defendant's statement that he didn't want anybody searching his property appears to have been the motivating factor in that assault being that he was concerned that his drug operation would be discovered since that occurred slightly before his drug trafficking. [¶] He has prior crimes involving violence. He was not cooperative with officers, and, in fact, he was hostile with the officers, and he was the sole participant in that offense.

8.

"Based upon that it does … appear to me the defendant is in his early 50s, is in good health and—but has shown no indication of a desire to rehabilitate, and it does not appear to me that he has any prospects for a stable life if the priors were stricken.  Based upon that it's my inclination at this time to deny the request under *Romero*."  (Italics added.)

## II.     Standard of Review

"[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to … section 1385[, subdivision ](a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

A trial court's decision not to strike a prior strike under section 1385 is reviewed for an abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).)  In reviewing for an abuse of discretion, appellate courts are guided by two fundamental principles.  "First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'"  (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978 (*Alvarez*), quoting *People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.)  Second, a '"decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'  (*Alvarez,* at p. 978, quoting *People v. Preyer* (1985) 164 Cal.App.3d 568, 573.)  Taken together, these precepts establish that a

trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376–377.)

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case." (*Carmony, supra*, 33 Cal.4th at p. 378.)

However, "'[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony, supra*, 33 Cal.4th at p. 378.)

## III.    Analysis

On appeal defendant contends the trial court missed evidence showing he had a desire for rehabilitation because defendant reported participating in AA/NA meetings and a program for at-risk youth, which was information not included in the 2019 probation report. Moreover, by 2023, defendant had been crime-free for four additional years, which also showed more steps toward rehabilitation. Defendant was conviction-free

between 1999 and 2015, and conviction-free since 2015; thus, defendant argues, this shows a significant amount of rehabilitation.

Additionally, defendant maintains, his current convictions are not statutorily violent offenses, they are garden variety felonies. He may have brought drugs into the prison, but he was not convicted of selling it. His in-custody battery offense was "relatively mild in nature," despite that the trial court characterized it as a violent offense at the 2019 sentencing hearing.

Further, defendant points out, the prior strikes are now extremely remote; his first strike in 1990 was committed when he was about 23 years old, and the second in 1997. Moreover, he maintains, his relative youth in 1990 should be a mitigating factor. Defendant also argues his numerous drug convictions show his addiction issues contributed to his criminal behavior, thus constituting a mitigating factor. Finally, defendant points out he was 56 years old and disabled when resentenced in 2023, and thus, he maintains, he is less likely to commit violent offenses due to his age.

The record reflects the trial court very thoroughly analyzed defendant's *Romero* request in 2019 pursuant to section 1385, subdivision (a), including the nature and circumstances of defendant's present felonies, prior convictions, and particulars of his background, character and prosects, to find that he is within the spirit of the Three Strikes law. (*People v. Williams, supra*, 17 Cal.4th at p. 161.)

Defendant has an extensive criminal history as the trial court recounted at the 2019 sentencing hearing. Defendant committed adult misdemeanor offenses in 1987 and 1989, and one felony drug possession offense. He was convicted of robbery in 1990, and while out on parole committed additional offenses in 1992 and 1996, including misdemeanor battery. He was convicted of several offenses in 1997, including second degree robbery (§ 211), assault likely to produce great bodily injury (§ 245, subd. (a)(1)), obstruction of an executive officer (§ 69), and dissuading a witness (§ 136.1). In prison, defendant was convicted in 1999 of drug possession. Defendant was a young offender in 1990, but he

reoffended several times in his late 20's and committed more serious crimes in 1997 when he was approximately 30 years old. He then reoffended in prison on three separate occasions. This is not a case where the defendant's strikes were remote *and* committed exclusively when he was a youth without any intervening criminal history, which would tend to suggest his prior strikes were attributable to his age and the immaturity and impetuosity that accompanies youth. (See *People v. Williams, supra*, 17 Cal.4th at p. 163 [explaining that 13 years between prior serious and/or violent felony convictions was not significant because the defendant did not stay crime-free during that time period, and the record did not establish he added maturity as he aged].)

Although defendant has not reoffended since he was convicted of the offenses occurring in 2014 and 2015, as the trial court pointed out in 2019, being offense-free for stretches of time while in the structured environment of prison does not necessarily suggest rehabilitation. This is especially true when defendant has a history of going for stretches of time without offending, but then offends again as was the situation between 1999 and 2014. In a similar vein, the trial court considered that defendant's past criminal history reflected a *decrease* in seriousness, but the court found that might "be due in large part to the fact that he remains in prison custody," and he nonetheless had continued to commit crimes for which he was prosecuted during his incarceration.

While the 2023 probation report notes defendant had participated in AA/NA meetings and a program for at-risk youth at some point, there is no evidence *when* or to what degree defendant participated in that programming; as such, it does not undercut the trial court's reasoning that defendant had not demonstrated he desired rehabilitation. Further, it is not clear what role defendant's drug abuse played in his prior strikes or his current crimes—while defendant suffered various convictions involving drug possession, it is far from clear how defendant's prior strikes or even his current offenses were related to or caused by his drug addiction. Neither of his prior strikes involved drug offenses, and the current offenses related to drug smuggling that suggests it may have been

motivated by profit interests, not just his own personal-use needs. While defendant has suffered various drug-related convictions in his past, there is no affirmative basis to assess how this might be a mitigating factor to any degree.

Moreover, even though defendant's current crimes are not statutorily considered serious or violent felonies within the meaning of the Three Strikes law, the trial court presided over both trials and viewed the crimes as serious and posing a significant risk to institutional security—defendant brought a substantial amount of methamphetamine into the prison through a younger coconspirator. The trial court noted defendant was not cooperative with the investigation, and he had directed a younger individual to help him. While defendant's drug offenses might be viewed as less serious than convictions related to *selling* drugs in the prison, the trial court's characterization was not arbitrary, unreasonable, or factually unsupported.

Further, the trial court characterized the battery offense as violent, and noted it appeared motivated by fears defendant's drug operation would be discovered. While the officer was not injured, the offense nonetheless involved a physical attack on a correctional officer, likely motivated to cover up defendant's drug smuggling. It was not arbitrary or irrational for the trial court to consider this violent conduct. The fact that reasonable minds might differ with respect to this characterization does not establish an abuse of discretion. (See *People v. Clair* (1992) 2 Cal.4th 629, 655 [facts that merely afford an opportunity for a difference of opinion do not establish an abuse of discretion].)

Finally, while defendant reported he was in a wheelchair due to deterioration of his spine and suffered diabetes and asthma, this was not raised by defense counsel's request to strike his prior convictions nor was it raised at the hearing. There is almost nothing other than defendant's self-report of his condition to the probation officer that indicates failing health, nor are health conditions necessarily relevant or dispositive to a determination of defendant's prospects or the likelihood he would once again recidivate.

At best, defendant has presented facts that show reasonable people might disagree about whether to strike one or more of the prior conviction allegations, but that is not enough to constitute an abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 378.) Defendant has not presented affirmative evidence that his case is so "extraordinary" as to require the dismissal of his prior strikes, or that the trial court's decision not to dismiss his prior strike was irrational or arbitrary. (See *id.* at pp. 378–379.)

## IV.    Correction of the Abstract of Judgment

We have identified a clerical error in the abstract of judgment. The second amended abstract of judgment misspells defendant's name as "Soloman." We direct the trial court to prepare an amended abstract of judgment with the correct spelling of defendant's last name (Solomon) consistent with the charging documents and other court records.[4] (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385–389.)

### DISPOSITION

The court's September 2023 judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment that correctly spells defendant's last name, and to forward a copy to the appropriate authorities.

---

[4]    Defendant also noted the correct spelling of his last name in his original appeal in *Solomon II* (Kings Super. Ct. case No. 15CMS7201). (*Solomon II, supra*, F078998.)